## ÆTNA LIFE INS. CO. v. LYON COUNTY.

*(Circuit Court, N. D. Iowa, W. D.  December 15, 1890.)*

1. COUNTIES—INDEBTEDNESS—REFUNDING BONDS.

   Refunding bonds issued by a county for the purpose of taking up a prior valid indebtedness of the county are not rendered invalid by the fact that they exceed the constitutional limitation on the indebtedness of counties and other municipalities.

2. SAME—ACTION ON BONDS—ESTOPPEL.

   Representations made by an agent appointed by a county board "for the purpose of funding and refunding the county indebtedness" that all the indebtedness proposed to be refunded by means of such bonds has been reduced to judgment, and then bonded, thus rendering the new bonds valid, though they exceed the constitutional limitation, do not estop the county to show the contrary, and that the bonds are invalid as against a purchaser thereof from such agent, as the county records are the best evidence of the purpose in issuing the bonds, and purchasers are bound to take notice thereof.

3. SAME.

   Where a county, having power to fund its indebtedness, issues bonds in payment of judgments standing in full force against it, it cannot attack the validity of the bonds, in an action thereon, by showing that the judgments against it are invalid because in excess of the constitutional limitation of its indebtedness.

4. SAME—JUDGMENT WITHOUT PREJUDICE.

   In an action at law on county refunding bonds which are part of a particular series, where a portion only of the amount for which such series of bonds was issued constitutes a valid and enforceable indebtedness of the county by reason of the constitutional limitation on its indebtedness, the court cannot determine the order in which the bonds were sold or the rights of the respective owners thereof, and judgment must be rendered for defendant without prejudice to plaintiff's right to establish its claim in some other proceeding.

At Law.  Action on interest coupons.

By consent of parties, this case was tried to the court, and, from the evidence submitted, the court makes the following finding of facts:

(1) This action is brought upon 410 interest coupons, for $30 each, originally attached to certain negotiable bonds, duly executed by the defendant, the county of Lyon, on the 1st day of May, 1885, and thereafter negotiated and delivered to the purchasers thereof, under the circumstances hereinafter stated, the said bonds being numbered as follows: 028 to 047, inclusive; 056 to 090, inclusive; 096 to 0120, inclusive.

(2) The defendant, the county of Lyon, is a municipal corporation, organized under the laws of the state of Iowa, within the meaning of section 3, art. 11, of the constitution of the state of Iowa, and was so organized early in the year 1872.

(3) The first state and county lists of the county were those for the year 1872, and the amount of taxable property within the defendant county, as shown by the state and county tax-lists for the various years since the organization of the county, is as follows:

| For the year 1872 | $ 499,099 96 | For the year 1879 | $ 915,133 28 |
|---|---|---|---|
| " " " 1873 | 1,009,444 56 | " " " 1880 | 1,066,707 00 |
| " " " 1874 | 997,822 62 | " " " 1881 | 978,259 00 |
| " " " 1875 | 1,061,806 63 | " " " 1882 | 989,550 00 |
| " " " 1876 | 1,081,356 09 | " " " 1883 | 1,384,289 00 |
| " " " 1877 | 885,262 80 | " " " 1884 | 1,437,527 00 |
| " " " 1878 | 889,757 85 | " " " 1885 | 1,558,043 00 |

(4) The first bonds issued by the county were issued July 29, 1872. During the year commencing July 29, 1872, and ending July 28, 1873, the sum of $55,000 in bonds was issued by the defendant county, under chapter 174 of

the Acts of the 14th General Assembly of Iowa, upon the following judgments, in the following amounts, at the date given below:

| | |
|---|---:|
| On Wilson & Joy judgment, dated July 18, 1872, $6,018.00, 8 bonds, dated July 29, 1872, amounting to........ | $ 6,000 |
| " Jas. H. Wagner judgment, dated July 18, 1872, for $1,269.96, 3 bonds, dated July 29, 1872, amounting to........ | 1,200 |
| " John A. Schmidt judgment, dated Oct. 11, 1872, for $6,001.50, 10 bonds, dated Oct. 14, 1872, amounting to........ | 6,000 |
| " J. P. Gilman judgment, dated Oct. 11, 1872, for $402.28, 4 bonds, dated Oct. 14, 1872, amounting to........ | 400 |
| " E. W. Lewis judgment, dated Oct. 11, 1872, for $1,528.40, 3 bonds, dated Oct. 14, 1872, amounting to........ | 1,500 |
| " A. G. Case........ | |
| " Wm. Larrabee judgment, dated Oct. 11, 1872, for $1,840.34, 5 bonds, dated Nov. 12, amounting to........ | 1,800 |
| " Joy & Wright judgment, dated Oct. 11, 1872, for $743.10, 3 bonds, dated Jan. 6, 1873, amounting to........ | 700 |
| " Wm. Larrabee judgment, dated Apr. 18, 1873, for $2,266.74, 4 bonds, dated Apr. 19, 1873, amounting to........ | 2,200 |
| " C. E. Gortz........ | |
| " Thos. Thorson judgment, dated Apr. 18, 1873, for $809.94........ | |
| " J. P. Gilman judgment, dated Apr. 18, 1873, for $499.20, 1 bond, dated Apr. 21, 1873, amounting to........ | 500 |
| " C. A. Greeley judgment, dated Apr. 18, 1873, for $5,411.30, 7 bonds, dated Apr. 22, 1873, amounting to........ | 5,400 |
| " Clark & Grant judgment, dated Apr. 18, 1873, for $8,197.70, 14 bonds, dated Apr. 22, 1873, amounting to........ | 8,200 |
| " Van Sickle & Bro. judgment, dated Apr. 18, 1873, for $1,268.70, 2 bonds, dated Apr. 22, 1873, amounting to........ | 1,200 |
| " Jas. H. Wagner judgment, dated Apr. 18, 1872, for $892.55, 4 bonds, dated May 5, 1873, amounting to........ | 900 |
| " J. C. Buchanan judgment, dated Apr. 18, 1873, for $1,210.24, 4 bonds, dated May 5, 1873, amounting to........ | 1,200 |
| " E. W. Lewis judgment, dated July 28, 1873, for $2,414.30, 7 bonds, dated July 28, 1873, amounting to........ | 2,400 |
| " P. H. Parsons judgment, dated July 23, 1873, for $2,897.89, 4 bonds, dated July 28, 1873, amounting to........ | 3,000 |
| " Geo. W. McQueen judgment, dated July 23, 1873, for $4,326.95, 7 bonds, dated July 28, 1873, amounting to........ | 4,300 |
| " C. L. Wright judgment, dated July 23, 1873, for $505.37, 1 bond, dated July 28, 1873, amounting to........ | 500 |
| " C. A. Greeley judgment, dated July 24, 1873, for $6,754.66, 18 bonds, dated July 28, 1873, amounting to........ | 6,800 |
| Total........ | $55,000 |

The last above judgment, being against the defendant and in favor of C. A. Greeley for the sum of $6,754.66, rendered on July 24, 1873, was rendered, bonded, and reversed under the following circumstances: C. A. Greeley brought a suit against the defendant county, in the district court of Plymouth county, Iowa, for the sum of $6,754.66. In this suit one F. W. Allen, a citizen and tax-payer of Lyon county, appeared and filed his petition of intervention prior to the rendition of judgment against the county, claiming and alleging that he was a citizen and tax-payer in the defendant county; that a great portion of the warrants sued on in the suit in which the petition of intervention was filed were fraudulent, and without consideration; that at the time they were issued the indebtedness of Lyon county exceeded the amount of 5 per centum of the taxable property of said county; and that the warrants upon which the suit was based were in excess of such limitation of indebtedness, and void. The petition of intervention further alleges that the board of supervisors of the county well knew that there was a good and valid defense to said warrants, and that the defendant county was not liable thereon, and that the warrants were fraudulent; and that, knowing these facts, they corruptly and fraudulently entered into an arrangement assisting the plaintiff in procuring a judgment against the said county upon the said warrants, and entered into conspiracy with the plaintiff to have a judgment taken upon the

same, and to prevent a full and impartial defense being made by the defendant county. The plaintiff and defendant county each moved to strike this petition of intervention from the files, on the ground that the tax-payer had no right of intervention, or to defend for the county. The court in Plymouth county sustained these motions to strike, and at the same time entered judgment against the defendant county, in favor of the plaintiff, for the full amount claimed. From this judgment and these orders the intervenor appealed, and the supreme court of the state of Iowa, on December 9, 1874, reversed the judgment of the court below, rendered against the county, and remanded the same for further proceedings. Thereafter, and on the 5th day of February, 1875, the case was transferred to Lyon county, on motion of the intervenor, where it was continued from term to term, and not disposed of, and no other judgment was entered therein. The judgment above referred to, and which was reversed by the supreme court, was entered against the county on the 24th of July, 1873. On the 28th day of that month, a transcript of the judgment was filed in Lyon county, and on the same day bonds were issued thereon in the sum of $6,800. The total amount of bonds issued upon judgments, not including the last judgment above referred to, was $48,200, and, including the judgment above referred to, there were issued an aggregate of $55,000.

(4½) I further find that the board of supervisors of Lyon county, on the 16th day of April, 1873, passed a resolution in the following form, to-wit:

"Whereas, there is now considerable outstanding indebtedness of the county of Lyon, in the shape of county warrants; and

"Whereas, the time for putting into judgment, and bonding the same, as provided by law, will expire on the 1st day of Sept. 1873; and

"Whereas, it is the opinion of the board of supervisors of Lyon county, Iowa. that the best interest of said county will be subserved by said indebtedness being bonded, in accordance with law:

"Now, therefore, be it resolved, and it is hereby moved and carried, by a majority of said board, convened as by law provided, that the holders thereof be, and hereby are, authorized and empowered to bring suit upon the same in any court in this judicial district, and obtain judgment on the same for the purpose of bonding: provided, however, that J. F. Eccleson and H. B. Wilson are hereby employed as sole attorneys, to appear in any court of this judicial district, and defend said county against all such warrants wherein the consideration thereof had failed, or wherein there is no consideration."

(5) From July 28, 1873, date of the issuance of the last of the $55,000 of bonds heretofore referred to, up to July 1, 1879, funding bonds were issued by the defendant county, under the provisions of chapter 1, tit. 4, of the Code of Iowa for 1873, as amended by chapter 9 of the Acts of the 15th General Assembly, and chapter 154 of the Acts of the 17th General Assembly, at various dates, and in various amounts, as follows:

| | |
|---|---:|
| October 19, 1874 | $10,000 00 |
| December 1, 1874 | 6,000 00 |
| February 16, 1875 | 1,000 00 |
| September 18, 1875 | 5,100 00 |
| October 18, 1875 | 200 00 |
| November 9, 1875 | 400 00 |
| September 6, 1876 | 20,000 00 |
| July 7, 1877 | 3,600 00 |
| February 7, 1878 | 1,000 00 |
| June 4, 1878 | 5,200 00 |
| February 19, 1879 | 1,400 00 |
| June 4, 1879 | 1,400 00 |
| Total | $55,300 00 |

All of the bonds were issued under resolutions of the board of supervisors, introduced in evidence, and which showed the purpose for which the bonds were issued; such purpose being to fund outstanding warrants and floating indebtedness against the county.

(6) I further find that on July 1, 1879, the defendant county issued $100,-000 of 8 per cent. refunding bonds, under the provisions of chapter 58 of the Acts of the 17th General Assembly of the state of Iowa, and upon the following resolution of the board of supervisors of said county, of date April 3, 1878:

"Whereas, in accordance with an act of the seventeenth general assembly of the state of Iowa, authorizing counties, cities, and towns to refund outstanding bonded indebtedness at a lower rate of interest, and to provide for the payment thereof, the board of supervisors of Lyon county, Iowa, in regular session assembled, deem it for the public interest to refund all indebtedness of said county, evidenced by bonds thereof, heretofore issued and outstanding at the time of the passage of this act.

"Therefore, be it resolved by said board of supervisors, that the chairman of said board and the auditor of said county are hereby authorized and empowered to issue the coupon bonds of said county in sums not less than one hundred dollars, ($100.00,) nor more than one thousand dollars, ($1,000.00,) having not more than fifteen years to run, redeemable in lawful money of the United States of America, at the pleasure of said county of Lyon, after five years from date of issue, and bearing interest, payable semi-annually, at the rate of eight per centum (8 per cent.) per annum, which bonds shall be substantially in the form set forth in said bill, to-wit, from lines eleven (11) to twenty-nine, (29,) inclusive, and deliver the same to J. Shade, the treasurer of said Lyon county, Iowa, who is hereby authorized to sell and dispose of said bonds so issued, in accordance with said act of the seventeenth general assembly of the state of Iowa, and for no other purpose, whatever.

"It is further resolved by the board of supervisors of said Lyon county that two per centum.(2 per cent.) be, and the same is hereby, appropriated of the bonds herein authorized to be issued, to pay the costs or expense of preparing, issuing, advertising, and disposing of the same, and that J. Shade is hereby employed as financial agent therefor, with power to employ an assistant, if he so desire, and that all matters herein set forth shall be done in strict conformity with this resolution, and the provisions of said act.

"The foregoing was approved by all the members of the board of supervisors of Lyon county."

(7) The foregoing resolution was spread upon the records, and is upon page 337 of Book A of the records of the proceedings of the board of supervisors of said county; and the proceeds of this issue of Shade refunding bonds, amounting to $100,000, were used to pay the principal and interest of bonds issued prior thereto, as follows: The amount of $53,500 thereof was used to pay in full all of the $55,000 of judgment bonds heretofore referred to, and which were issued in 1872 and 1873, and which were outstanding and unpaid, being in amount $53,000 of principal and $500 of interest, including the whole of the $6,800 issued upon the judgment in favor of C. A. Greeley, and which was reversed in the supreme court of Iowa, as hereinbefore found. The remainder of the proceeds arising from the sale of the issue of Shade refunding bonds of $100,000, issued July 1, 1879, was used to pay said above-mentioned $47,300 of funding bonds, not issued upon, or to pay judgments with accrued interest thereon, amounting to $1,085, hereinbefore referred to as being issued between October 19, 1874, and February 7, 1878, both dates inclusive.

(8) I further find that the following additional judgments were entered against the defendant Lyon county at the dates and in the amounts named, to-wit:

| | |
|---|---:|
| E. T. Kirk, July 24, 1873 | $2,204 23 |
| James H. Wagner, April 21, 1874 | 672 06 |
| A. J. Harmon, April 21, 1874 | 381 42 |
| Perkins Bros., August 22, 1874 | 815 05 |
| Wilson & Van Saun & Co., May 5, 1875 | 3,850 34 |
| Lyman J. Gage, Oct. 16, 1875 | 4,460 56 |
| C. H. Smith, Nov. 15, 1876 | 233 00 |
| E. T. Drake, May 14, 1878 | 462 67 |
| Swan & Fawcet, May 14, 1878 | 603 00 |
| A. H. Andrews & Co., May 14, 1878 | 107 45 |
| T. C. Thompson, May 14, 1878 | 304 00 |
| Chase & Taylor, May 14, 1878 | 479 10 |

(9) I further find that bonds had been issued to discharge these last-named judgments, which bonds in turn have been merged in or paid from the proceeds of later issues of bonds.

(10) I find that there were no judgments rendered against the defendant county after the 1st day of Jan., 1879, and that all judgments against the defendant county prior to that date, had been satisfied prior to that date, either by bonds as hereinbefore found, warrants, or cash.

(11) I find that the next bonds issued by the defendant county were issued on January 8, 1880, and that on said date, and at various dates subsequent thereto, up to and including July 1, 1885, there were issued $60,600 of funding bonds, under the provisions of chapter 1, tit. 4, of the Code of 1873; chapter 9 of the Acts of the 15th General Assembly; chapter 125 of the Acts of the 16th General Assembly; chapter 154 of the Acts of the 17th General Assembly; chapter 183 of the Acts of the 18th General Assembly; chapter 147 of the Acts of the 19th General Assembly; chapter 80 of the Acts of the 20th General Assembly,—at dates and in amounts as follows:

| | |
|---|---:|
| January 8, 1880 | $ 600 00 |
| May 12, 1880 | 11,600 00 |
| June 14, 1880 | 6,800 00 |
| November 12, 1880 | 2,400 00 |
| September 6, 1881 | 4,000 00 |
| January 13, 1882 | 9,000 00 |
| September 1, 1884 | 3,100 00 |
| March 1, 1885 | 3,100 00 |
| July 1, 1885 | 20,000 00 |
| Total | $60,600 00 |

(12) I find that the whole amount of said bonds was issued for the purpose of taking up outstanding floating warrants against said county, and, on the date of the issuance of the last $20,000 thereof, to-wit, July 1, 1885, there was over $20,000 of warrants outstanding against said county, which had been outstanding and unpaid more than six months prior to July 1, 1885, said bonds being issued to take up said warrants under a resolution of the board of supervisors of said county, of date April 10, 1884, as follows:

"Whereas, the county of Lyon, state of Iowa, has a floating indebtedness in warrants of the different funds of said county, and whereas, the board of supervisors of said county deem it for the best interest of the county to bond the same, be it therefore resolved by the board of supervisors of Lyon county, Iowa, that the chairman, with the auditor, be authorized to issue bonds in amounts sufficient to cover said indebtedness, and deliver the same to the county treasurer, and take his receipt therefor.

"Adopted by a full vote of the board."

(13) On May 1, 1885, an issue of $120,000 of refunding bonds was made by the defendant county under the provisions of chapter 58 of the Acts of the 17th General Assembly, and chapter 175 of the Acts of the 20th General Assembly of the state of Iowa, and under a resolution of the board of supervisors of said county, of date April 11, 1884, as follows:

"Whereas, it is deemed to be for the public interest to refund the indebtedness of the county of Lyon, state of Iowa, evidenced by the bonds thereof, heretofore issued and outstanding on the 1st day of Jan., 1884, and to issue the coupon bonds of county.

"It is therefore resolved by the board of supervisors of said county in session assembled, to issue coupon bonds of this county, in sums not less than one hundred nor more than one thousand dollars, having not more than twenty years to run, redeemable in lawful money of the United States of America, at the pleasure of the county, after five years from the date thereof, and bearing interest, payable semi-annually, at 6 per cent. per annum, which bonds shall be substantially in the form given in section 1, ch. 58, 17th General Assembly, and shall bear the date of July 1, 1884, or on the first day of any month called for by Miller & Thompson, and the chairman of the board, and the auditor of this board, and auditor of the county are hereby directed to issue same in accordance with said statute and this resolution.

"In testimony whereof the said county, by its board of supervisors, has caused this bond to be signed by the chairman of the board, and attested by the auditor, with the county seal attached, this 1st day of May, 1885.

[Seal.]                              "J. G. ANDERSON,
                                  "Chairman of the Board of Supervisors.
                              "L. C. THOMPSON,
                                  "County Auditor."

The foregoing preamble and resolution was passed the 11th day of April, 1884, by the vote of all the members of this board present, which was 4-5 of all the members thereof.

(14) That on the 9th day of January, 1885, the board of supervisors of the defendant, Lyon county, duly adopted the following resolutions:

"On motion, the resolution appointing Miller & Thompson as financial agents for funding and refunding county indebtedness, and the contract entered into in such resolutions, is hereby rescinded.

"On motion, it is hereby resolved by the board of supervisors that B. L. Richards is hereby appointed financial agent for Lyon county, for the purpose of funding and refunding county indebtedness, and that said B. L. Richards is required to give bond covering amount called for at any time by said agent. This resolution is passed in accordance with the Laws of 1873, and the amendment thereto."

That under these resolutions the defendant county, on the first day of May, 1885, duly executed one hundred and twenty refunding bonds in the sum of one thousand dollars each, numbered 01 to 0120 inclusive. That said bonds were identical in form, and are as follows:

"UNITED STATES OF AMERICA.

"Number                                              Dollars
"0106              *State of Iowa, Lyon County.*      1000

"The county of Lyon, in the state of Iowa,

"For value received, promises to pay to Connecticut General Life Insurance Co., or order, at the office of the treasurer of said county of Rock Rapids, on the 1st day of May, 1905, or at any time before that day after the expiration of five years, at the pleasure of the county, the sum of one thousand dollars, with interest at the rate of six per cent. per annum, payable at the

office of the said treasurer semi-annually, on the 1st days of May and November in each year, on presentation and surrender of the interest coupons hereto attached. This bond is issued by the board of supervisors of said county, under the provisions of chapter 58 of the Session Laws of the 17th General Assembly, chapter 175 of Public Laws of the 20th General Assembly of the state of Iowa, and in conformity with a resolution of said board dated 10 day April, 1884."

Indorsed on the back of the bond:

### "CHAPTER LVIII.

"An act to authorize counties, cities, or towns to refund outstanding bonded debt at a lower rate of interest, and to provide for the payment of the same.

"Section 1. Be it enacted by the general assembly of the state of Iowa that counties, cities, and towns are hereby authorized and empowered, if by a vote of two-thirds ($\frac{2}{3}$) of the board of supervisors or city or town council, as the case may be, it be deemed for the public interest to refund the indebtedness of such corporation, evidenced by the bonds thereof, heretofore issued and outstanding, at the time of the passage of this act, and to issue the coupon bonds of such corporation in sums not less than one hundred dollars, ($100.00,) nor more than one thousand dollars, ($1,000.00,) having not more than twenty years to run, redeemable in lawful money of the United States of America, at the pleasure of such corporation, after five years from the date of their issue, and bearing interest payable semi-annually, at a rate not exceeding eight per cent. (8%) per annum, which bonds shall be substantially in the following form:

" 'No. ———.

" 'The ——— of ———, in the state of Iowa, for value received, promises to pay ———, or order, at the office of the treasurer of said ———, in ———, on the first day of ———, or at ——— time before that date, after the expiration of five years, at the pleasure of said ———, the sum of ——— dollars, with the interest at the rate of ——— per cent. per annum, payable at the office of said treasurer semi-annually, on the first days of ———, and in each year, on presentation and surrender of the interest coupons hereto attached.

" 'This bond is issued by the ——— of said ———, under the provisions of chapter ——— of the Session Laws of the Seventeenth General Assembly of Iowa, and in conformity with a resolution of said ———, dated ——— day of ———, 18—.

" 'In testimony whereof the said ——— has caused this bond to be [L. S.] signed by the ———, and attested by the ———, seal attached, this ——— of ———, 18—.'

"And the interest coupons shall be in the following form:

" '$ ———.

" 'The treasurer of ———, Iowa, will pay to the holder hereof on the ——— day of ———, 18—, at his office in ———, ——— dollars, for interest on bond No. ———, issued under the provisions of chapter ——— of the Session Laws of the Seventeenth General Assembly.'

"Sec. 2. The treasurer of any such corporation is hereby authorized to sell and dispose of the bonds issued under this act at not less than their par value, and to apply the proceeds thereof to the redemption of the outstanding bonded debt, or he may exchange said bonds for outstanding bonds, par for par; but the bonds hereby authorized shall be issued for no other purpose whatever: provided, however, such corporation may appropriate, not to exceed two per centum (2%) of the bonds herein authorized, to pay the expenses of prepar-

ing, issuing, advertising, and disposition of the same, and may employ a financial agent therefor.

"Sec. 3. The board of supervisors or common council of any city or town, as the case may be, shall cause to be assessed and levied each year, upon the taxable property of the county, city, or town, as the case may be, in addition to the levy authorized for other purposes, a sufficient sum to pay the interest on outstanding bonds, issued in conformity with the provisions of this act, accruing before the next annual levy, and such proportion of the principal that at the end of eight years the sum raised from such levies shall at least equal fifteen per cent. (15%) of the amount of bonds issued, at the end of ten years, at least thirty per cent. (30%) of the amount, and at and before the date of maturity of the bonds shall be equal to the whole amount of the principal and interest; and the money arising from such levies shall be known as the 'bond fund,' and shall be used for the payment of bonds and interest coupons, and for no other purpose whatever; and the treasurer of such county, city, or town shall open and keep in his books a separate and special account thereof, which shall at all times show the exact condition of said bond fund.

"Sec. 4. Whenever the amount in the hands of the treasurer of any such county, city, or town, belonging to the bond fund, after setting aside the sum required to pay the interest coupons maturing before the next levy, is sufficient to redeem one or more bonds, he may notify the owner of such bond or bonds that he is prepared to pay the same, with all the interest accrued thereon; and, if said bond or bonds are not presented for payment or redemption within thirty (30) days after the date of such notice, the interest on such bonds shall cease, and the amount due thereon shall be set aside for its payment whenever presented: provided, however, that nothing herein shall be construed to mean that any such bond or bonds issued in accordance with this act shall be due or payable before the expiration of five years after its date of issue. All redemption shall be made in the exact order of their issuance, beginning at the lowest or first number, and the notice herein required shall be directed to the post-office address of the owner, as shown by the record kept in the treasurer's office.

"Sec. 5. If the board of supervisors of any county, or the common council of any city or town, which has issued bonds under the provisions of this act, shall fail to make the levy necessary to pay such bonds or interest coupons at maturity, and the same shall be presented to the treasurer of any such county, city, or town, and payment thereof refused, the owner may file the bond, together with all unpaid coupons, with the auditor of the state, taking his receipt therefor, and the same shall be registered in the auditor's office, and the executive council shall, at their next session as a board of equalization, and at each annual equalization thereafter, add to the state tax to be levied in said county, city, or town a sufficient rate to realize the amount of principal or interest past due, and to become due prior to the next levy; and the same shall be levied and collected as a part of the state tax, and paid into the state treasury, and passed to the credit of such county, city, or town, as bond tax, and shall be paid by warrants, as the payments mature, to the holder of such obligations, as shown by the register in the office of the state auditor, until the same shall be fully satisfied and discharged: provided, that nothing in this act shall be construed to limit or postpone the right of any holder of any such bonds to resort to any other remedy which such holder might otherwise have.

"Sec. 6. This act, being deemed by the general assembly of immediate importance, shall take effect from and after its publication in the Iowa State Register and Iowa State Leader, newspapers published at Des Moines, Iowa. "Approved March 20, 1878.

## "CHAPTER CLXXV.

"*Acts Twentieth General Assembly. An act to amend chapter 58, Acts of the Seventeenth General Assembly.*

"Be it enacted by the General Assembly of the State of Iowa:

"Section 1. That section one (1) of chapter 58, Acts of the Seventeenth General Assembly of Iowa, be amended by striking out of the fifth and sixth lines the words 'heretofore issued and outstanding at the time of the passage of this act,' and insert in lieu thereof the words 'now outstanding,' and strike out the word 'eight,' in the twelfth line, and insert in lieu thereof the word 'six.'

"Sec. 2. This act, being deemed of immediate importance, shall take effect and be in force from the date of its publication in the Iowa State Register and Iowa State Leader, newspapers published in Des Moines."

(15) I find the proceeds arising from the sale of the $120,000 of "Richards" refunding bonds, issued May 1, 1885, were used to take up the $100,000 of "Shade" refunding bonds, issued July 1, 1879, and $16,900 of funding bonds, issued June 4, 1878, and subsequent thereto, as follows:

| | |
|---|---:|
| Of issue of June 4, 1878 | $ 1,700 00 |
| "     "     " Feb. 19, 1879 | 1,000 00 |
| "     "     " June 4, 1879 | 100 00 |
| "     "     " May 12, 1880 | 11,600 00 |
| All of issue of June 12, 1880 | 2,500 00 |
| Total | $16,900 00 |

—and also to pay the commission and expense of placing said bonds, amounting to $2,438.59; and the balance of the amount realized from the sale of said bonds, amounting to $661.41, was applied on the payment of accrued interest on the bonds taken up.

(16) I find that five per cent. (5 per cent.) of the value of the taxable property within the county of Lyon, defendant, as ascertained by the state and county tax-lists for the several years since the organization of the county up to 1885, is as follows:

| | | | |
|---|---:|---|---:|
| 1872 | $24,954 99 | 1879 | $45,756 66 |
| 1873 | 50,172 22 | 1880 | 53,335 35 |
| 1874 | 49,891 13 | 1881 | 48,912 95 |
| 1875 | 53,090 33 | 1882 | 49,477 50 |
| 1876 | 54,067 80 | 1883 | 69,214 45 |
| 1877 | 44,263 14 | 1884 | 71,876 35 |
| 1878 | 44,487 89 | 1885 | 77,902 15 |

(17) Of the issue of $100,000, bearing date July 1, 1879, there is no testimony as to the order in which the bonds were sold upon the market. Of the issue of $120,000, of date May 1, 1885, the testimony tends to show that they were sold at the date, and in the amounts, and of the numbers, and to the persons or corporations, as follows, to-wit:

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| June | 1, 1885, Nos. | 01 to | 027 to | G. B. Provost. | | | |
| " | 4, | " | " | 048 " | 052 " | C. H. Eighmey. | |
| " | 6, | " | " | 053 " | 055 " | Dubuque National **Bank.** | |
| Aug. | 28, | " | " | 056 " | 090 " | Ætna Life Ins. Co. | |
| Sept. | 1, | " | " | 091 " | 095 " | U. S. National Bank. | |
| " | 1, | " | " | 096 " | 0105 " | Orient Fire Ins. Co. | |
| " | 2, | " | " | 0106 " | 0110 " | Conn. Gen. Life Ins. Co. | |
| " | 8, | " | " | 028 " | 047 " | Saving & Trust Co. of Cleveland, **O.** | |
| " | 20, | " | " | 0111 " | 0120 " | Hartford Steam Boiler Inspection **and Insurance** Company. | |

(18) I find further that the $20,000 of bonds issued **July 1, 1885,** were sold on September 3, 1885.

(19) I further find that said B. L. Richards, as refunding and financial agent of the defendant county, at the time he sold said bonds numbered 028 to 047, inclusive, 056 to 090, inclusive, and 096 to 0120, inclusive, submitted to the purchasers the following statements, certificates, and affidavits as evidence of the validity of the bonds offered for sale. The statements contained in the affidavit of B. L. Richards, sworn to under date of September 1, 1885, were made orally in the first instance by him, when seeking to make sale of the bonds, and subsequently reduced to the form of an affidavit, and sworn to under date of September 1, 1885:

"EXHIBIT J.

"*Certified copy of the proceedings of Board of Supervisors of Lyon County, Iowa, April* 10, 1884.

"Bonding.

"Whereas the county of Lyons, state of Iowa, has a floating indebtedness in warrants on the different funds of said county; and whereas, the board of supervisors of said county deem it for the best interest of the county to bond the same:

"Be it therefore resolved by this board of supervisors of Lyon county, Iowa, that the chairman, with the auditor, be authorized to issue bonds in amounts sufficient to cover said indebtedness, and deliver the same to the county treasurer, and take his receipt therefor.

"Adopted by full vote of the board."

"(Under our state law, the bonds authorized to be issued by above resolution are optional 6 per cents., running ten years, with interest, payable semiannually, at office of county treasurer.

[Signed]                                    "T. C. THOMPSON, Auditor.)"

"Refunding, April 10, 1884.

"Whereas, the county of Lyon, state of Iowa, has a bonded indebtedness, consisting of 8 per cents., and whereas, the board of supervisors of said county deem it for the best interest of the county to refund the said indebtedness, be it therefore resolved that said board of supervisors receive and consider bids for that purpose, and accept the best offer made for accomplishing said refunding.

"Adopted.

"On motion, the bid for bonding of Miller & Thompson and refunding the county indebtedness was accepted."

"January, 1885, Session, (January 9, 1885.)

"On motion, the resolution appointing Miller & Thompson financial agents for funding and refunding the county indebtedness, and the contract entered under such resolution, is hereby rescinded.

"On motion, it is hereby resolved by the board of supervisors that B. L. Richards is hereby appointed as the financial agent for Lyon county, for the purpose of funding and refunding the county indebtedness, and that said B. L. Richards is required to give a bond covering the amount called for at any time by said agent.

"This resolution is passed in accordance with the laws of [Code] 1873, and amendment thereto.

"I hereby certify that the above and foregoing is a complete record of the proceedings of said board of supervisors of Lyon county, Iowa, and that said B. L. Richards is duly authorized financial agent of the county, with full authority to negotiate the bonds of the county.

[Seal.]        [Signed]                        "T. C. THOMPSON, County Auditor.

"I, T. C. Thompson, auditor of Lyon county, Iowa, hereby certify that the total bonded debt of Lyon county now outstanding is $140,000, represented by bonds of following dates, amounts, and rates of interest:

| | |
|---|---:|
| "Refunding bonds, July 10, 1879, optional after July 1, 1884, 8 per cent | 100,000 |
| "Funding June 4, 1878 optional 10 years, 8 per cent | 2,400 |
| Feb. 19, 1879, 8 per cent | 1,000 |
| June 4, 1878, 8 per cent | 100 |
| May 12, 1880, 7 per cent | 11,600 |
| June 1, 1880, 7 per cent | 6,800 |
| Nov. 12, 1880, 7 per cent | 2,400 |
| Sept. 6, 1881, 7 per cent | 4,000 |
| June 13, 1882, 6 per cent | 9,000 |
| Sept. 1, 1884, 6 per cent | 3,100 |
| | 140,400 |

—"That there never has been default made in payment of any interest coupons on any of above bonds since they were issued, and provision by levy for payment of interest has been made for 1885.   That the total amount of floating debt now outstanding is about $25,000, and does not exceed that amount.   That of the floating debt represented by county warrants there are—

| | |
|---|---:|
| "Contingent fund warrants | 15,692 |
| "Bridge    "    " | 8,191 |
| "Poor    "    " | 1,016 |
| | 24,899 |
| "Adding bonded debt | 140,400 |
| "Making total debt | $165,299 |

—"That the assessed valuation of the property of Lyon county, as taken from the assessment rolls of 1884, is as follows:

| | |
|---|---:|
| "357,021 acres, at $4.00 | 1,428,084 |
| "Town lots | 23,079 |
| "Personalty | 72,330 |
| "Railroad | 57,242 |
| | 1,580,755 |

—"That the land is assessed not to exceed one-third of its value.   That town lots, with the buildings thereon, are worth, at a moderate valuation, $500,000. That the personal property is valued at not more than one-tenth of its value. The real value of the property would be listed as follows:

| | |
|---|---:|
| "357,021 acres, at $12 per A | 4,234,252 |
| "Town lots | 500,000 |
| "Personalty | 723,300 |
| "Railroad | 57,242 |
| "Total real value | 5,564,794 |

"*Rock Rapids, Iowa, March* 9, 1885.

[Signed]                                     "T. C. THOMPSON, Auditor.   [Seal.]

"I, John G. Watkins, treasurer of Lyon county, Iowa, hereby certify that the bonds as listed by the county auditor, amounting to $140,400, are correct, and that the county is not in default in payment of interest on any of said bonds, and that provision for the year 1885 for payment of coupons has been made.

"*Signed at Rock Rapids, March* 9, 1885.

[Signed]                               "JOHN G. WATKINS,
                               "County Treasurer of Lyon County, Iowa.

"I, C. H. Smith, clerk of the district and circuit courts of Lyon county, Iowa, hereby certify that I am acquainted with T. C. Thompson, county auditor, and John G. Watkins, county treasurer, and know their signatures; that they are the present officers of Lyon county, in auditor's and treasurer's

offices, and that their signatures are attached to the foregoing certificates touching the debt of Lyon county, Iowa.

[Seal.]   "*Dated Rock Rapids, Iowa, March* 9, 1885.
   [Signed]                          "CHAN. H. SMITH,
   "Clerk of the District and Circuit Courts in and for Lyon Co., Iowa."

Also Exhibit L, which is as follows, to-wit:

"EXHIBIT L.

"*McCeney & O'Donnell, Attorneys at Law.*

"DUBUQUE, IOWA, August 26, 1885.

"We are asked our legal opinion as to the validity of the issue of $140,400 of refunding bonds by the county of Lyon in this state. The certified copy of the record of the proceedings of the board of supervisors is not sufficient for us to determine several questions necessarily involved, viz.: *First.* Whether the refunding resolution of April 10, 1884, was adopted by the required two-thirds vote of the board of supervisors. *Second.* Whether these bonds evidence an indebtedness which was passed in judgment against the county. Assuming, however, from what Mr. Richards states, that the above-named resolution was adopted by the same vote as the bonding resolution, and that the indebtedness of the county for which it is proposed to issue these bonds was merged in, and is now evidenced by, a judgment against Lyon county, then we say that, notwithstanding the fact that said amount of $140,-400 was evidently in excess of the constitutional limitation upon counties not to contract an indebtedness in excess of 5 per centum of the assessed valuation of their property as shown by the last previous assessment, still the amount of the judgment or judgments, no matter if in excess of such 5 per centum, would be a valid obligation against the county, and the judgment would forever bar the county from pleading the constitutional defense. The county having had its day in court, and full opportunity to plead the overissue of warrants, or whatever may have been on the evidence of its debt, cannot again, whether it did before or not, be heard to make that defense again on any bond or other security given to pay such judgment. This is fully determined in the case of *Railroad Co.* v. *Osceola Co.,* 45 Iowa, 168. In order to issue the bonds of a county to refund its bonded indebtedness under the authority of law, all the action required is a vote by resolution, or otherwise, of the board of supervisors, by a two-thirds majority, declaring their intention so to do, as they deem it for the best interest of the county. Chapter 58, Acts 17th General Assembly. The two points above mentioned being conceded, viz., that the resolution authorizing the refunding was adopted by the required vote, (and the legal presumption is that it was,) and that the bonds are to refund judgment bonds, we give it as our opinion that the $140,400 of bonds are legal and binding upon the county of Lyon, no matter who may be the purchaser.

   [Signed]                          "McCENEY & O'DONNELL.

"We mean to be understood by the above that the last issue of bonds by Lyon county to refund the refunding bonds which were issued to take up the judgment bonds are legal and binding upon the county.

   [Signed]                          "McCENEY & O'DONNELL."

Also Exhibit M, which is as follows:

"EXHIBIT M.

"AUGUST 29, 1885.

"*To McCeney & O'Donnell, Dubuque, Iowa:* Judgments were obtained against Lyon county, Iowa, and judgment bonds were issued to satisfy same,

Refunding bonds were issued to take up the judgment bonds. Refunding bonds upon which your opinion was given were issued to take up first-mentioned refunding bonds. Are last issue refunding bonds legal and binding obligations against the county?

[Signed]                                         "B. L. RICHARDS."

Also Exhibit N, which is as follows:

"Dated DUBUQUE, IOWA, August 30, 1885.

"*To B. L. Richards:* Yes. Last issue being authorized by law, and to pay judgments, is legal and binding.

[Signed]                              "McCENEY & O'DONNELL."

Also Exhibit O, which is as follows:

"*State of Connecticut, Hartford County*—ss: I, B. L. Richards, of Lyon county, Iowa, being duly sworn, on oath depose and say that I was present at the meeting of the board of supervisors of Lyon county, Iowa, held April 10, 1884, and that the said meeting was a regular one; that at said meeting the resolution set forth in copy of proceedings of said board on file with Ætna Life Insurance Company at Hartford was offered, and adopted by the full vote of the board. No negative vote was cast.

"I further depose that the refunding bonds of Lyon county, Iowa, were issued July 1, 1879, for the purpose of taking up the outstanding judgment bonded indebtedness of said county, and the proceeds of said refunding issue were used for that purpose, and that the refunding issue of May 1, 1885, $20,000, bonds Nos. 01 to 0120, inclusive, are issued to take up the refunding bonds dated July 1, '79.

[Signed]                                         "B. L. RICHARDS.

"Subscribed and sworn to by B. L. Richards before me this 1st day of Sept., 1885.

"CHARLES J. COLE, Justice of the Peace.

(20) I further find that the purchasers of the bonds, from which the coupons sued on were attached, at the time the sale thereof was negotiated, knew that the issue of which the bonds offered for sale formed part was in an amount greater in the aggregate than 5 per cent. upon the total valuation of the taxable property of the county of Lyon, as shown by the state and county tax-lists of that and all preceding years, but that the purchasers bought them in the belief that, being refunding bonds, they were valid and binding, and were so induced to believe by reason of the statements made to them by said B. L. Richards, and the written documents submitted to them as set forth in the last preceding finding.

(21) I further find that the amount due upon the coupons in suit is $12,300, with interest at 6 per cent. from the maturity of each coupon.

(22) I find that the plaintiff is now, and has since the date of the sale of the bonds to it been, the full and beneficial owner of the coupons in suit which were detached from bonds Nos. 056 to 090, inclusive, and as to the remaining coupons in suit plaintiff is the holder thereof, the legal title thereto being vested in it, although plaintiff is liable to account, as agent or trustee, for the proceeds realized therefrom to the parties who originally bought the bonds, and who retain a beneficial interest in the proceeds realized.

*Cummins & Wright* and *Henderson, Hurd, Daniels & Kiesel*, for plaintiff.
*Kauffman & Guernsey* and *Van Wagenen & McMillan*, for defendant.

SHIRAS, J., (*after stating the facts as above.*)   The questions of law aris-
ing on the foregoing facts have been very fully and ably presented by the
counsel for the respective parties, and it is perhaps needless to say that
there is a wide divergence in the views advanced touching the judgment
that should be rendered by the court.   It clearly appears from the evi-
dence that the plaintiff and other purchasers of the bonds issued by the
defendant county in pursuance of the resolution adopted by the board
of supervisors in April, 1884, bought the same in good faith, and paid
therefor the full face value and accrued interest; and the amount thus
received was applied by the county, through its re...nding agent, to the
payment of bonds then outstanding against the county.   It no less clearly
appears that the issue of bonds negotiated by B. L. Richards on behalf
of the county, being in amount $120,000, exceeded largely the constitu-
tional limitation of 5 per cent. upon the valuation of the taxable prop-
erty in the county, as shown by the last preceding state and county
tax-lists.   If this issue of bonds had been negotiated in the purchase of
property then acquired, or for the erection of county buildings or other
like purpose, so that thereby a new or original indebtedness had been
thereby created against the county, there could then be no question that
the bonds themselves would be void by reason of the provision of the
constitution of the state of Iowa, limiting the indebtedness of all munici-
pal and political corporations within the state to 5 per cent. upon the
taxable valuation of the property within the limits of the particular
corporation, and a recovery thereon could not be had, even in favor of
parties who had paid full value therefor in the belief that the bonds
were valid.   *Buchanan* v. *Litchfield,* 102 U. S. 278; *Dixon Co.* v. *Field,*
111 U. S. 83, 4 Sup. Ct. Rep. 315; *Lake Co.* v. *Rollins,* 130 U. S. 662;
9 Sup. Ct. Rep. 651; *Lake Co.* v. *Graham,* 130 U. S. 674, 9 Sup. Ct.
Rep. 654.   The bonds in question were not issued for any such purpose,
but were issued for the purpose of refunding other outstanding bonds of
the county; and the issuance thereof did not in fact increase the indebt-
edness of the county, but only changed the form or evidence of indebt-
edness.   Under these circumstances, it is broadly claimed on behalf of
plaintiff that the bonds, being issued to refund or pay other bonds, are
not affected by the constitutional limitation.

   To the extent of holding that, as applied to a series of refunding bonds,
the mere fact that the amount thereof might exceed 5 per cent. of the
then taxable valuation of the property within the county, as shown by
the tax-lists, would not necessarily show that the bonds so issued were
invalid, I can agree in the views of counsel for plaintiff.   If a county
owes a valid and enforceable indebtedness, refunding bonds, issued un-
der authority of an act of the legislature for the purpose of taking up
such enforceable indebtedness, are not invalid because they may exceed
the 5 per cent. limitation.   In such case, the refunding bonds are valid,
because they represent a valid indebtedness.   *Railroad Co.* v. *County of
Osceola,* 45 Iowa, 168; *Austin* v. *District Tp. of Colony,* 51 Iowa, 102.   In
suits, therefore, upon refunding bonds representing prior indebtedness,
it is necessary, in order to sustain the defense of invalidity, to show that

the indebtedness merged in and represented by the refunding bonds was itself invalid and non-enforceable, either in whole or in part, and, in the present case, both parties have introduced evidence on this issue.

On behalf of plaintiff, it is claimed that the representations made by B. L. Richards, the accredited agent of the county, to the effect that all the indebtedness proposed to be refunded by means of the issuance of the series of bonds which were negotiated by him to plaintiff and others had been reduced to judgment, and then bonded, estops the county from showing the contrary. I do not think the statements made by Richards come within the principle contended for. When these bonds were offered to the plaintiff, it was known to the parties acting for the plaintiff that the series of bonds proposed to be negotiated exceeded in amount 5 per cent. of the taxable property in the county, and therefore, to authorize the issuance thereof, there must be then in existence a valid indebtedness to the amount of $120,000, which it was proposed to refund by the issuance of the bonds in question. The validity of the bonds was asserted upon the claim that the bonds to be refunded represented claims that had been reduced to judgment, and therefore were enforceable against the county. The puchasers knew, and were bound to know, that, unless this assertion was true, the bonds would be invalid, because in excess of the constitutional limitation, and the purchasers were bound to ascertain what the fact in this particular was. The bonds themselves contain no recital on the subject. The certified copy of the proceedings taken by the board of supervisors in regard to the issuance of the bonds, and which copy was submitted to the purchasers, does not contain any statement showing that the bonds proposed to be refunded were based wholly upon prior judgments. The statement relied upon as an estoppel was made by Richards first orally, and then in the form of an affidavit; but he was not then acting on behalf of the county in ascertaining or certifying to a fact which the law required to be then ascertained and determined as the basis for further action. He was the refunding agent of the county, but he did not have the power to determine any question or matter pertaining to the right to issue the bonds. *Dixon Co.* v. *Field*, 111 U. S. 83, 4 Sup. Ct. Rep. 315; *Daviess Co.* v. *Dickinson*, 117 U. S. 657, 6 Sup. Ct. Rep. 897. The resolution of the board of supervisors appointing Richards declares the object of the appointment to be "for the purpose of funding and refunding the county indebtedness," and the resolutions adopted by the board under date of April 10, 1884, show upon their face that it was the purpose of the board to undertake the bonding of the floating indebtedness, as well as the refunding the then outstanding bonded indebtedness.

Upon the question of what the bonds proposed to be refunded were the representative, and whether the same were based upon judgments previously rendered against the county, the records of the county constituted the primary and best evidence. Richards had no charge over or connection with those records, nor was he the one to whom application would naturally be made by one seeking to know the origin and purpose of the outstanding bonded indebtedness of the county. If the effect

of an estoppel is given to statements of this character, the protection intended to be secured by the constitutional provision limiting the amount of indebtedness of counties and other municipal corporations would be wholly destroyed. In every instance it could be evaded by the simple device of appointing a refunding agent; and by his statements create an estoppel against the county or city, and thus validate any amount of bonds that might be issued. I hold, therefore, that the representations made by Richards do not operate as an estoppel against the county, but that it is open to the county to show that the bonds merged into the refunding bonds sold by Richards were in whole or in part invalid and non-enforceable.

On behalf of the defendant, it is argued that, upon this issue of unconstitutionality, it is open in this proceeding to question the validity of judgments against the county, or of bonds issued to fund or pay judgments against the county. In this claim I cannot concur. The constitutional limitation is not self-acting. The protection of its provisions must be invoked at the proper time, and in the proper mode. If judgments are obtained against a county, and the same are not reversed, but remain in full force, they are evidence of the highest nature that the county owes the amounts adjudged to be due; and if the county, having the power to fund its outstanding indebtedness, issues bonds in payment of such judgments, the validity of the bonds cannot be successfully attacked, when suit is brought thereon, by showing that, if the defense had been interposed in the original case, the claim might have been defeated, and that the judgment actually rendered might have been prevented. As is said by the supreme court in *Cromwell* v. *Sac County*, 94 U. S. 351:

"Thus for example, a judgment rendered upon a promissory note is conclusive as to the validity of the instrument, and the amount due upon it, although it be subsequently alleged that perfect defenses actually existed, of which no proof was offered, such as forgery, want of consideration, or payment. If such defenses were not presented in the action, and established by competent evidence, the subsequent allegation of their existence is of no legal consequence. The judgment is as conclusive, so far as future proceedings at law are concerned, as though the defenses never existed."

The argument of counsel would have weight if the constitutional provision was to the effect that no judgment could be rendered against a county under any circumstances. In such case, even though a court should enter up a judgment, its unconstitutionality and invalidity would be self-apparent, and could always be availed of when its enforcement might be attempted, and this for the reason that upon its face the judgment would show that the court was without jurisdiction. A defense based upon the clause limiting the amount of municipal indebtedness to 5 per cent. upon the amount of taxable property is of a wholly different nature. It requires a proper pleading of the facts, and upon the trial proper evidence must be introduced, or else the defense fails. It makes no difference in the validity of the judgment whether the defendant failed to plead the defense based upon the constitutional limitation, or

failed to sustain the defense, if pleaded, by sufficient evidence. In either case the rendition of the judgment established the validity of the claim against the county, and the judgment, so long as it remains unreversed, cannot be questioned on the ground that the amount thereof exceeds 5 per cent. of the taxable property in the county.

The evidence shows that, when the bonds owned by plaintiff were issued and sold, there was outstanding against the county bonds representing judgments, and possibly other enforceable debts, to an amount exceeding 5 per cent. of the taxable property in the county. It follows that, to the extent of this enforceable indebtedness, the county could have issued valid refunding bonds. The amount of bonds issued and sold exceeds the amount of this enforceable indebtedness, and it may be said, therefore, that part of the indebtedness represented by this series of bonds is valid and enforceable and part not. That the holders of these bonds have equities against the county, will not be questioned. The question is, whether effect can be given thereto in this action.

It is argued that the bonds would be valid until the amount needed to refund the enforceable debt had been reached, and that it will be presumed that the bonds were sold in the order of their number. Such a presumption cannot be indulged in under the facts of this case. To settle the equities and rights of the bondholders against the county, and their rights as between themselves, would seem to require the institution of a suit in equity. In this action at law between one owner of part of the bonds and the county, it is beyond the power of the court to hear and determine the question of the order in which the series of bonds was sold, or the application of the proceeds realized from the sales thereof, and whether the facts are such that a certain number of the bonds can be held valid at law, or whether it should not be held that each owner of a bond is equitably entitled to demand his share of the total sum which may be adjudged to be collectible from the county.

It seems to me that the only means of solving the difficulties of the situation is for the plaintiff and the other non-resident bondholders to unite in a proper proceeding in equity against the county and such other bondholders as may refuse to act as complainants, and in such suit it can finally be determined for what amount the county can be held liable, and the rights of the respective bondholders in and to this sum can be decreed. As the case now stands, I hold that the facts show that the series of bonds isued by the county, and negotiated by B. L. Richards, as agent of the county, represent, in part, bonds previously issued, and which were enforceable against the county, and, in part, bonds which were invalid and non-enforceable; but that in the present case at law, and in the absence of interested parties, it is impossible to determine what part or proportion of the coupons sued on belong to bonds that represent the valid indebtedness refunded therein. While the plaintiff has shown a right of recovery against the county for some amount, it has failed to show a legal right to recover on all the coupons sued on, or any particular number thereof, and hence there is no basis for rendering a judgment at law in the present cause. For this reason, judgment

herein must be in favor of defendant; such judgment, however, to be without prejudice to the right of plaintiff to establish, in any other proper proceeding, its rights against the county growing out of the purchase by plaintiff of the bonds of the county.