Austin v. The District Township of Colony.

AUSTIN v. THE DISTRICT TOWNSHIP OF COLONY.

1. **School District**: POWER TO BORROW MONEY: LIABILITY UPON ITS ORDER.
The directors of a school district have power to borrow money to discharge a debt which has been legitimately created, and are authorized to pledge the credit of the district for that purpose. BECK, CH. J., and DAY, J., *dissenting*.

2. ———: ———: INTEREST. They cannot, however, make the obligations evidencing such a debt bear a higher rate of interest than six per cent.

*Appeal from Adams Circuit Court.*

SATURDAY, APRIL 26.

ACTION to recover upon a school order. The defendant denies the validity of the order. The facts are stated in the opinion. Judgment for defendant. Plaintiff appeals.

*McCaughan & Dabney*, for appellant.

*Davis & Wells*, for appellee.

ADAMS, J.—The order purports to be given for money furnished in the erection of a school-house. While the defendant district township questions the validity of the order, it does not do so by demurrer. We conclude, therefore, that it is considered that the order appears to be valid upon its face, and, if invalid, it is so by reason of the facts which the defendant sets up in its answer. The facts relied upon are as follows: The district township had voted to erect a school-house, to cost not more than two thousand dollars. The money on hand and the taxes levied amounted to that sum. The directors proceeded to erect the school-house, and in doing so they paid more than two thousand dollars, thereby exceeding the limit which had been imposed upon them. In the progress of the work they borrowed of the plaintiff four hundred and ninety-five dollars, for which the order in suit was given. It is claimed by the defendant that the directors,

in borrowing the money, acted beyond the scope of their official powers, and that the defendant is not bound thereby.

It is not claimed by the plaintiff that the power to borrow money is expressly given to a district township, but it is said that it may erect school-houses, and that the directors may make all contracts necessary to carry out the vote of the district township; and such seems to be the law. Code, § 1723.

If the act in question is valid, it is because it was a contract necessary to be made in the erection of the school-house which the district township had voted. The first question presented is as to whether the directors were authorized to proceed in the erection of the school-house in advance of the collection of the taxes. If they were, they had the power to pledge the credit of the district. In no other way could the school-house have been erected. Upon this point we find that the defendant took action, which is recorded in these words: "Moved and seconded that we proceed to build a school-house." Under that authority it appears to us that the directors were justified in proceeding at once. There is certainly no statutory inhibition upon a district township to prevent it from erecting a school-house in advance of the collection of the taxes necessary to pay for it. It seems, indeed, that debts may be contracted in the erection of a school-house in advance even of the levy of the necessary taxes. Code, § 1717, subdivision 3. In this case the directors did proceed in the erection of the school-house and did incur indebtedness. So far, we think they were authorized. So far, indeed, their authority is not questioned by the defendant. Now the evidence shows that the money borrowed of the plaintiff was used in paying indebtedness already contracted. Whether the indebtedness which the money was used in paying was in excess of the limit fixed by the district township, to the cost of the school-house, does not distinctly appear. While such fact is material, the burden is on the defendant to prove the fact. *Chautauqua County Bank v. Risley*, 19 N. Y. 369; *Safford v. Wyckoff*, 4 Hill, 442; *Farmers' Loan & Trust Co. v.*

*Clowes*, 3 Comst., 470. We will assume, then, that it (the indebtedness paid) was not in excess of the limit, and that the money was borrowed for paying, and was used in paying, legitimate indebtedness.

But it is contended that where a corporation has contracted illegitimate indebtedness it should be regarded as without power to borrow money even to pay legitimate indebtedness, because the money might be misappropriated. But this would certainly constitute no reason why a corporation should be allowed to escape liability where the money was actually used in paying legitimate indebtedness, as we show, in the absence of evidence, this must be assumed to have been done.

The question, then, is as to whether the directors, in borrowing money for such purpose, were making a contract necessary to carry out the vote of the district township. It was, of course, for the directors to judge whether it was necessary to meet the indebtedness at that time. Possibly the payment of it at that time saved the district township from costs, or saved its credit when its credit was important to it. The fact that the directors borrowed money and paid the indebtedness is evidence that they deemed it necessary, and, as they were the proper judges of such facts, we must presume, in the absence of evidences to the contrary, that it was necessary. If so, it was a part of the appropriate and necessary means of carrying out the vote of the district township for the erection of a school-house.

So far as the directors contracted indebtedness in excess of the limit fixed such indebtedness was illegitimate. *Reichard v. Warren County*, 31 Iowa, 381. They could not, of course, properly borrow money to pay such indebtedness. A legitimate debt could not be contracted for the purpose of discharging an illegitimate one. With this restriction, and one other which we are about to mention, it seems to us that the rights of the district township are sufficiently guarded. In *Clark v. School District No. 7*, 3 R. I. 199, the validity of a promissory note given by the defendant for money borrowed

to pay indebtedness was contested, and was held valid. The court said: "A corporation may bind itself by a negotiable promissory note for any debt contracted in the course of its legitimate business, for any expenses incurred in any matter or thing which it is authorized to do, or any matter which is not foreign to the purpose of its creation. It does not alter the amount of indebtedness, nor is the ultimate purpose different. Upon the negotiation of such note the corporation becomes liable to other persons than the original creditor, and the liability—the whole debt—may be changed from him to a third person, and its liability to the original creditor extinguished. A direct borrowing could do no more."

If the defendant in the case at bar had given its promissory note or order to the original creditor, we presume its power to do so would not have been questioned. Such promissory note or order could have been transferred to the plaintiff if he was willing to purchase it. In such case the liability to the original creditor would have been extinguished, and a liability to the plaintiff would have been created. The borrowing of money of the plaintiff, and the discharge therewith of the original indebtedness, has the same effect, so far as the burden is concerned which is cast upon the district township. It will be seen at once that such borrowing rests upon an entirely different basis from that by which an original liability is created. It is a mere formal change in a liability already legitimately contracted. As is said in the case above cited: "It affects neither the public generally nor the members of the particular corporation in any different way, their rights or interests." A similar principle was decided in *Gelpcke v. The City of Dubuque*, 1 Wallace, 221. The city council was prohibited from borrowing money except when authorized by a vote of the electors. The council contracted with the plaintiff to pay the interest upon its bonds. The transaction was held not to be a borrowing of money within the meaning of its charter.

According to the view which we have taken of this case,

while the directors had power to borrow money, to discharge

2. ——: ——:
interest.

a legitimate indebtedness previously contracted, they did not have power to contract to pay more than six per cent interest. The order sued upon was given sometime after the money was loaned, and embraces some interest at a greater rate, as we infer, than six per cent, supposed to have previously accrued. The order is also made to bear ten per cent interest. It appears, therefore, that it was given for too large a sum, and that part which provides for ten per cent interest is in part invalid. The amount recoverable upon the order, we think, is the sum of four hundred and ninety-five dollars, the amount loaned, and six per cent, interest thereon from the time of the loan.

　　　　　　　　　　　　　　　　　　　　　REVERSED.


BECK, CH. J., *dissenting.*—I am unable to concur in the foregoing opinion for the following reasons:

I. As I understand the record the money was borrowed, thus creating the indebtedness for which the order sued upon was issued, after the limit of the expenditure authorized by the vote in the district had been reached.

II. The district, in my opinion, has no lawful authority to borrow money to pay an indebtedness, though lawfully contracted. It is admitted on all hands that no such authority is conferred by statute. It is, in my judgment, beyond the power of the courts to confer upon these corporations authority withheld by the Legislature.

The absolute certainty that this authority will be often abused by school districts borrowing money to pay debts contracted in violation of law, as I claim the record shows was done in this case, is the cause of profound regret on my part that a majority of the court adopt the rule of the foregoing opinion. In my judgment there is no security for the prosperity of corporations of the character of school districts, other than that attained by strictly confining them, in matters pertaining to the contracting of debts and levying of

taxes, within the limits of their authority as prescribed by statute.

Day, J., concurs with me in this dissent.

### ON REHEARING.

Adams, J.—We have carefully examined the arguments and authorities cited upon rehearing, and are satisfied with the correctness of the views expressed in the opinion filed. It is accordingly adhered to, and the judgment of the court below is

Reversed.

Beck, Ch. J., and Day, J., *dissenting*.