HOTCHKISS, APPELLANT, *v.* MARION ET AL., RE-
SPONDENTS.

[Submitted March 28, 1892.   Decided April 18, 1892.]

COUNTIES — *Coupon bonds — Funding indebtedness — Constitutional law.* —The issuance by a county of coupon bonds to the extent of one hundred and fifty thousand dollars for the purpose of redeeming outstanding county warrants to that amount is merely a change in the form of a subsisting liability, and not the creation of a new indebtedness or liability, and is therefore not within the inhibition of the Constitution and laws of the State, which provide, in effect, that counties shall not incur an indebtedness or liability for any single purpose in an amount exceeding ten thousand dollars without the approval of a majority of the electors of the county.

SAME — *Warrants of Missoula County — Interest — Constitutional law.* — Section 794, fifth division of the Compiled Statutes, enacted by the territorial legislature fixing the rate of interest on county warrants and excepting the county of Missoula from its operation, is in conflict with the State Constitution (art. v. § 26), and the Act of Congress, approved July 30, 1886 (24 U. S. Stats. p. 170), prohibiting local or special laws regulating county affairs or the rate of interest on money, and it is therefore not illegal for the commissioners of Missoula County to issue coupon bonds to redeem the outstanding warrants of the county.

CONSTITUTIONAL LAW — *Title of act of legislature.* — The Act of March 4, 1891, entitled " An act to amend sections 790, 795, 796, and 808, fifth division of the Compiled Statutes of Montana," relates to one general subject, and is not obnoxious to section 23, article v. of the Constitution, prohibiting the passage of a law containing more than one subject, which shall be expressed in its title.

*Appeal from Fourth Judicial District, Missoula County.*

Action against the commissioners of Missoula County to restrain the issue of county bonds. Defendant's demurrer to the complaint was sustained by MARSHALL, J.   Affirmed.

*McConnell, Clayberg & Gunn,* for Appellant.

*Henri J. Haskell,* Attorney-General, and *F. C. Webster,* for Respondents.

BLAKE, C. J.—The complaint alleges that the board of county commissioners of Missoula County, of this State, made September 11, 1891, the following order: "It is therefore ordered by said county commissioners that coupon bonds to the amount of $150,000 be issued on the credit of said county for the purpose of redeeming outstanding county warrants to that amount. Such bonds shall be of the denomination of $1,000 each, and shall bear date January 1, 1892, and shall be redeemable and payable in twenty years after the date thereof, and shall bear interest at the rate of six per cent per annum, and such interest shall be represented by interest coupons, payable semi-annually on the first days of January and July of each year; and each bond, and all coupons attached thereto, shall be signed by the chairman of the board of county commissioners, and the treasurer of said county, and each bond shall also be sealed and countersigned by the clerk of said county, and each coupon shall be signed by the said clerk.  Each bond issued shall be registered by said county treasurer in a book provided for the purpose, which shall show the number and amount of each bond and to whom issued.  The said county clerk is hereby ordered to give notice for said county commissioners, by advertisement in the official newspaper published in said county, and also in one or more newspapers published in the city of New York, State of New York, for a period of not less than thirty days prior to the time said bonds are to be sold, for sealed proposals, which shall state the amount of such bonds for sale; and the parties offering the highest price therefor shall be entitled to receive the amount of such bonds which he or they may offer to buy, but no bonds shall be sold for any price less than the par value thereof.  The seventh day of December, 1891, at ten o'clock A. M., is fixed as the day for receiving

said proposals and selling said bonds. Each bidder to submit a certified check for the sum of $2,500, as an evidence of good faith in bidding." Said board made December 8, 1891, this order: "The clerk was ordered to advertise for bids for the sale of Missoula County bonds to the amount of $150,000 in the official newspaper of the county, and also in one or more newspapers published in the city of New York. Said bonds are to be issued for the purpose of redeeming outstanding county warrants to that amount. Bonds to be redeemable and payable twenty years after the date thereof, and shall bear interest at the rate of six per cent, payable semi-annually on the first days of July and January, to be issued in denominations of not less than $1,000, and to be sold at not less than par value. Sealed bids will be received up to January 25, 1892, at two P. M. Each bid must be accompanied by a certified check for $2,500, which amount to be forfeited in case of the refusal of the successful bidder to take bonds."

It is also alleged that the date of the sale of the bonds was changed to the twenty-third day of February, 1892. The county clerk caused the proper advertisement for the bids to be published, and E. H. Rollins and Sons were declared to be the purchasers of the bonds. The floating indebtedness of the county at this time was about $172,171.32, which was evidenced by county warrants. The plaintiff avers that the board did not submit the question of the issuance of the bonds to the qualified electors of the county, and that its action is without legal authority and void. It is further alleged that the board of commissioners will, unless restrained by the court, issue the bonds to the purchasers, and proceed to levy and collect taxes for the purpose of paying the interest thereon, and provide a sinking fund for the payment of the principal.

The court below, upon the reading and filing of the complaint, granted a temporary restraining order, and enjoined the county commissioners, county clerk, and county treasurer from selling, transferring, or issuing the bonds, or performing any acts in relation to the same. Afterwards the demurrer to the complaint, upon the ground that the facts therein stated did not constitute a cause of action, was sustained by the court, and the injunction was dissolved. The plaintiff de-

clined to amend his pleading, and judgment was entered for the defendants.

One inquiry is presented for our consideration: Do the Constitution and laws of the State require the board of commissioners of Missoula County to submit to the voters the question of the issuance of said bonds? We will review the financial legislation of the Territory affecting counties, in order that the matters which have been discussed by counsel may be clearly understood. The fourth legislative assembly, by an act approved November 22, 1867, authorized the county commissioners of the several counties of the Territory to fund the debts thereof by the issuance of bonds in lieu of the outstanding orders. (4th Sess. Stats. p. 234.) It is recorded in our history that these statutory provisions were repeatedly executed, and bonded indebtedness in a large amount was incurred by counties, and discharged. The financial condition of the Territory improved with the growth, and many special laws were passed to secure the same object, by reason of the high rate of interest which was fixed in the first statute. We refer to some of these enactments to show that they contained similar provisions: Lewis and Clarke County: 7th Sess. Stats. p. 640; 12th Sess. p. 95; 13th Sess. p. 138. Missoula County: 11 Sess. Stats. p. 91; 12th Sess. p. 88; 13th Sess. p. 127. Jefferson County: 11th Sess. Stats. p. 96; 13th Sess. p. 132. By an act approved March 6, 1883, the legislative assembly enlarged the powers of the county commissioners in issuing bonds to redeem the outstanding indebtedness of their respective counties. (13th Sess. Stats. p. 92.) It was substantially a codification of the general requirements of the special laws, and was passed to avoid the necessity for this legislation, which arose at every session. Some of the sections of this act were amended in the year 1887, and no further modification has been made by the legislative assembly.

It is admitted that the board of county commissioners of Missoula County has complied in all respects with the law as it appears in the Compiled Statutes. From the year 1867 to the present time the authority of a board of county commissioners to issue bonds to redeem the outstanding warrants, orders, and bonds of a county, has been frequently exercised

without any statutory requirement to submit the question to the electors. (Comp. Stats. div. 5, § 808.) There has been, however, a marked distinction upon this subject concerning the issuance of bonds by the county commissioners to erect public buildings or contract a loan: The first legislative assembly of the Territory, by an act approved February 9, 1865, gave the boards of county commissioners the power to borrow money upon the credit of the county "for the erection of county buildings, or to meet the principal expenses of the county in case of a deficit in the county revenue." (1st Sess. Stats. p. 501, § 14.) But a board could not borrow money for these purposes "without having first submitted the question of such loan to a vote of the electors of the county." (1st Sess. Stats. p. 502, § 15.) This language remained without any change until the admission of the Territory into the Union. (Comp. Stats. div. 5, §§ 756, 795.)

Let us compare this legislation, which was familiar to the members of the constitutional convention, to the provisions of our Constitution: "Private property shall not be taken or sold for the corporate debts of public corporations, but the legislative assembly may provide by law for the funding thereof, and shall provide by law for the payment thereof, including all funded debts and obligations, by assessment and taxation of all private property not exempt from taxation, within the limits of the Territory over which such corporations, respectively, have authority." (Art. xii. § 8.) "No county shall incur any indebtedness or liability for any single purpose to an amount exceeding ten thousand dollars ($10,000) without the approval of the majority of the electors thereof voting at an election to be provided by law." (Art. xiii. § 5.) The Constitution, in these plain terms, has empowered the legislative assembly to provide by law for the funding of "all funded debts and obligations" of a county.

The legislative assembly of the State, by an act approved March 4, 1891, amended section 808, *supra*, so that it reads as follows: "The county commissioners of each county of this State shall have, and are hereby given, in addition to the powers already conferred on them by law, the authority to issue, on the credit of their respective county, coupon bonds to an amount sufficient to enable them to redeem any or all legal outstanding

bonds, warrants, or orders, and also, whenever thereunto authorized by a vote of the electors of the county, they shall have authority to issue, on the credit of their respective county, coupon bonds, for the purpose and to the amount thereby authorized." The same act also amended section 795, *supra,* so that it reads as follows: "The board of county commissioners of any county, may, when in its judgment it is advisable for the county to incur an indebtedness or liability for any single purpose in an amount exceeding ten thousand dollars ($10,000), submit the question to the qualified electors of the county." Section 795, *supra,* is as follows: "The board of county commissioners shall not borrow money for the purpose specified in the fourth subdivision of section 756, chapter 39, without having first submitted the question of such loan to a vote of the electors of the county." The subdivision referred to is identical with the fourteenth section, *supra,* of the act of the first legislative assembly of the Territory. If we comprehend the words of these statutes, the fiscal policy respecting counties, which has been in force since the organization of the Territory, has been continued by the Constitution. This appears to have been the intention of the framers of that instrument, who acted with a full knowledge of this history.

It is plain that the issuance of these bonds, which changed the form of the outstanding bonds, warrants, and orders of the county of Missoula, is not the creation of a new indebtedness or liability within the constitutional prohibition. In *Blanton* v. *Commissioners,* 101 N. C. 535, Chief Justice Smith said: "The mere renewed recognition of a subsisting liability in the issue of a new bond, declared in the very act which authorizes the issue 'to be a continuation of the liability' resting upon the county, cannot, upon any sound reasoning, be deemed the creation of a new debt, in the sense of its falling under the restrictions applicable to new contracts of indebtedness, with the deprivation of the pre-existent means of enforcing performance by the levy of the necessary taxes." Judge Shiras in *Cummins* v. *Doon,* 42 Fed. Rep. 650, said: ",The refunding of an existing enforceable debt cannot be said to be increasing the indebtedness, and a mere change in the evidence of the debt from one bond to another, or from a judgment into a bond, is not within the

constitutional inhibition. (*Austin* v. *District Tp. of Colony*, 51 Iowa, 102; *S. C. & St. P. Ry. Co.* v. *County of Osceola*, 45 Iowa, 168.'' See, also, *Sherman Co.* v. *Simons*, 109 U. S. 739; *Powell* v. *City of Madison*, 107 Ind. 110.) The Constitution has recognized and preserved the distinction between laws which relate to the funding of an indebtedness which is already in existence, and the incurring of new liabilities to an amount exceeding $10,000. The approval of a majority of the electors is not essential to the validity of this action of the board of county commissioners of Missoula County.

It is intimated in the brief that some of the warrants which are to be redeemed do not bear interest, and that it is illegal for the board of county commissioners to issue coupon bonds therefor. No allegation to this effect is contained in the complaint, but the appellant calls our attention to the statute: "All county warrants that may be drawn after the first day of March, A. D. 1881, by the proper authorities of any county, after having been presented to the county treasurer of the respective counties of this Territory, and by them indorsed, 'Not paid for want of funds in the treasury,' from and after said date of presentation and indorsement, shall draw interest at the rate of seven per centum per annum: *provided*, that the provisions of this section shall not apply to the county of Missoula, in this Territory." (Comp. Stats. div. 5, § 794.) Conceding that the warrants of Missoula County are not interest bearing, the position of appellant cannot be sustained. The same point was raised in *Chapman* v. *Morris*, 28 Cal. 393, and it was held that an act of the legislature which produced this result was constitutional.

We deem it proper to say that this *proviso* to section 794, *supra*, is in conflict with the Constitution of the State, and an act of Congress approved July 30, 1886, which declares that the legislature of the Territory "shall not pass local or special laws" regulating county affairs, or the rate of interest on money. (24 U. S. Stats. p. 170.) Section 794, *supra*, was first enacted February 7, 1881, as an amendment to the Revised Statutes. (12th Sess. Stats. p. 84.) We think that the *proviso* was repealed by an act concerning Missoula County, which was approved March 3, 1883. (13th Sess. Stats. p. 127.) The fourth section declared that "from and after the first day of January, 1885,

the laws of the Revised Statutes of Montana pertaining to the general management and government of other counties of Montana shall be in full force and effect in Missoula County." The act also repealed some special laws regarding Missoula County, and it is evident that the real purpose is to abrogate all statutes, immunities, and privileges in its behalf. Through an oversight, the *proviso* was re-enacted March 1, 1887. The Constitution has solemnly ordained, in similar words, the foregoing prohibition with respect to this special legislation. (Art. v. § 26.) We are satisfied that the county warrants of all the counties of the Territory and State which have been regularly drawn by the proper officers since January 1, 1885, have been governed by the same law, and bear interest under the same conditions. The commissioners have conformed to the statutes in making the order *supra*, and the validity of the bonds described in the complaint cannot be questioned.

The title of the act *supra* of the legislative assembly of the State is "An act to amend sections 790, 795, 796, and 808 of the fifth division of the Compiled Statutes of Montana." It is suggested by appellant that more than one subject is therein contained which is not expressed in the title, and that the Constitution has been violated. "No bill, except general appropriation bills, and bills for the codification and general revision of the laws, shall be passed containing more than one subject, which shall be clearly expressed in its title; but, if any subject shall be embraced in any act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be so expressed." (Art. v. § 23.) This act relates to one general subject. The first section prescribes the time when the county bonds shall be redeemable. The second section defines the duty of the county commissioners in submitting to the people the question of incurring county indebtedness. The third section refers to the notice of election which may be called under the second section. The fourth section points out the authority of the county commissioners to issue bonds to redeem outstanding bonds, warrants, or orders. These sections of the Compiled Statutes, which are amended by this act, are comprised in the chapter which treats of county finances, bonds, and warrants, and are germane to the object of the bill. This

restriction upon legislative power, which has been incorporated in the Constitution of many States, has been interpreted by the courts. Judge Cooley has thoroughly considered this clause, and says: "It may therefore be assumed as settled that the purpose of these provisions as: *First.* To prevent hodgepodge or 'logrolling' legislation. *Second.* To prevent surprise or fraud upon the legislature by means of provisions in bills of which the titles gave no intimation, and which might, therefore, be overlooked, and carelessly and unintentionally adopted. . . . . The general purpose of these provisions is accomplished when a law has but one general object, which is fairly indicated by its title. To require every end and means necessary or convenient for the accomplishment of this general object to be provided for by a separate act, relating to that alone, would not only be unreasonable, but would actually render legislation impossible. . . . . There has been a general disposition to construe the constitutional provision liberally, rather than to embarrass legislation by a construction whose strictness is unnecessary to the accomplishment of the beneficial purposes for which it has been adopted." (Const. Lim. [4th ed.] 175, 178; *Davis* v. *State,* 7 Md. 151; 61 Am. Dec. 331, and notes.)

The Supreme Court of the United States has decided that statutes similar to that under investigation are not obnoxious to this constitutional provision. (*Montclair* v. *Ramsdell,* 107 U. S. 153; *Otoe Co.* v. *Baldwin,* 111 U. S. 16; *Ackley School Dist.* v. *Hall,* 113 U. S. 141; *Mahomet* v. *Quackenbush,* 117 U. S. 508; *Carter Co.* v. *Sinton,* 120 U. S. 522.)

It is ordered that the judgment be affirmed.

*Affirmed.*

HARWOOD, J., and DE WITT, J., concur.