EDWARDS, APPELLANT, v. COUNTY OF LEWIS AND CLARK, RESPONDENT.

(No. 3,805.)

(Submitted January 23, 1917. Decided March 13, 1917.)

[165 Pac. 297.]

*Counties—Refunding Bonds—Power to Issue—Constitution— Statutes.*

Constitution—Nature of Instrument.
  1. The state Constitution is not a grant but a limitation of powers.
Counties—Powers—Constitution.
  2. A county is a subdivision of the state for governmental purposes, and as such is subject to legislation, regulation and control, except in so far as the Constitution has placed limitations upon the law-making power.

Same.

3. Unless a county can find authority in the statutes for a contemplated act, it is powerless to carry it into execution.

[As to counties as municipal corporations, see note in Ann. Cas. 1914C, 968.]

Same—Issuance of Refunding Bonds—Powers.

4. The authority of the board of county commissioners to issue refunding bonds in excess of $10,000 must be determined by reference to section 2905, Revised Codes, as amended (Laws 1915, p. 47), and section 2933.

Same—Refunding Bonds—Issuance—Electors' Vote Necessary, When.

5. *Held*, under sections 2905 and 2933, above, that the board of county commissioners could not issue bonds, in excess of $10,000, for the purpose of refunding outstanding road warrants, without having first obtained the approval of the electors of the county.

Same—Borrowing Money—Creating Indebtedness—Constitution—Statutes.

6. *Held*, that the words "incur indebtedness or liability," used in section 5, Article XIII, Constitution, and "borrow money," found in section 2933, Revised Codes, referring to the power of the county to do either, are not synonymous; the former having to do with the creation of new indebtedness, while the latter deals with borrowing money through the instrumentality of issuing bonds for any of the purposes mentioned in the Title of which the section forms a part.

*Appeal from District Court, Lewis and Clark County; R. Lee Word, Judge.*

ACTION by Frank J. Edwards to enjoin the county of Lewis and Clark from issuing certain refunding bonds. Judgment for defendant. Plaintiff appealed. Reversed and remanded.

*Mr. Edward Horsky,* for Appellant, submitted a brief and argued the cause orally.

Counties are merely political subdivisions of the state, and are purely auxiliaries of the state. They are clearly not municipal corporations, are only *quasi* corporations, merely governmental agencies, and do not possess the local legislation and control which are the distinguished characteristics of a municipal corporation. (*Hersey* v. *Neilson*, 47 Mont. 132, 140–143, Ann. Cas. 1914C, 963, 131 Pac. 30.) They have only such powers as are clearly provided by law or are necessarily implied by those expressed. (*Independent Pub. Co.* v. *Lewis and Clark Co.*, 30 Mont. 83, 75 Pac. 860; 7 R. C. L. 925, sec. 5; *Burnett* v. *Maloney,* 97 Tenn. 697, 34 L. R. A. 541, 37 S. W. 689.) "A county is

the lowest order of corporate existence." (1 Dillon on Municipal Corporations, 23.) By reason of the above features, "counties are held to a much greater degree of strictness than cities." (*Burnett* v. *Maloney,* 97 Tenn. 697, 34 L. R. A. 541, 57 S. W. 689.) "And so when the legislature of a state has prescribed the specific mode in which a county shall proceed in a particular matter, the legislative direction must be followed." (7 R. C. L. 927; *State* v. *Newton County,* 165 Ind. 262, 6 Ann. Cas. 468, 74 N. E. 1091; *State* v. *Goldthait,* 172 Ind. 210, 19 Ann. Cas. 737, 87 N. E. 133; *Henry County* v. *Citizens' Bank,* 208 Mo. 209, 14 L. R. A. (n. s.) 1052, 106 S. W. 622.)

"If in the issue of the bonds, or the issuance of the indebtedness generally, there is any substantial departure from constitutional and statutory authority by any subordinate officials, boards, or bodies, the departure invalidates the indebtedness. It is no answer to say that the departure was for the best interests of the community; subordinate officers have no concern except to keep to the terms of their commissions." (Gray's Limitation on Taxing and Debt Power, sec. 2126; *Sutro* v. *Pettit,* 74 Cal. 332, 5 Am. St. Rep. 442, 16 Pac. 7; *Lytle* v. *Lansing,* 147 U. S. 59, 37 L. Ed. 78, 13 Sup. Ct. Rep. 254; *McClure* v. *Oxford,* 94 U. S. 429, 24 L. Ed. 129; *Bates County* v. *Winters,* 97 U. S. 83, 24 L. Ed. 933; *Buchannan* v. *Litchfield,* 102 U. S. 278, 26 L. Ed. 138; *Merrill* v. *Monticello,* 138 U. S. 673, 34 L. Ed. 1069, 11 Sup. Ct. Rep. 441.)

An Act which exempts property in municipalities from a county road tax is valid, since they are made separate districts and compelled to maintain their own streets and alleys. (*Miller* v. *County of Kern,* 137 Cal. 516, 70 Pac. 549.) The meaning of the constitutional requirement that the tax shall be uniform is, that each tax must be uniform through the taxing district, a state tax through the state, a county tax through the county, a district tax through the district, *etc.* (*City of East Portland* v. *Multnomah County,* 6 Or. 62; *Cooper* v. *Ash,* 76 Ill. 11.) "Where the legislature has the power to make the territory out-

side the city a separate district, and has done so, the rule of uniformity does not prevent—and indeed requires—that the inhabitants of the city should not be obliged to pay county road taxes." (Gray's Limitation, *etc., supra,* sec. 528, n. 84; *Miller* v. *County of Kern,* 137 Cal. 516, 70 Pac. 549; *Cooper* v. *Ash,* 76 Ill. 11; *City of East Portland* v. *County of Multnomah,* 6 Or. 62; *Multnomah County* v. *Sliker,* 10 Or. 65; *Oregon City* v. *Moore,* 30 Or. 215, 46 Pac. 1017, 47 Pac. 851.)

*Mr. J. B. Poindexter,* Attorney General, and *Mr. John H. Alvord,* Assistant Attorney General, for Respondent, submitted a brief; *Mr. Frank Woody,* Assistant Attorney General, argued the cause orally.

The inhabitants of cities do not by their act of incorporation lose their character as members of the general public or residents of the county in which their city is situated; nor does their property lose its status as property within the county, subject to county burdens. They are still members of the body corporate, known as the county, exercising all of the privileges to which that status entitles them, and laboring under all the burdens which it entails. Hence, property within municipal corporations being within the territorial limits of the authority levying taxes must bear its portion of the public need, to the same extent that it is charged with the support of the state or county government in other particulars. (*O'Kane* v. *Treat,* 25 Ill. 557; *Love* v. *Town of Preston,* 112 Minn. 459, 128 N. W. 673; *Alexander* v. *McInnis,* 129 Minn. 165, 151 N. W. 899; *Board Commrs. Gunnison Co.* v. *Owen,* 7 Colo. 467, 4 Pac. 795.) Nor do we think the argument advanced by some cases and suggested by the court in *Board Commrs. Gunnison Co.* v. *Owen, supra,* that because cities levy taxes for the support of streets and alleys, they should therefore be exempted from general road taxes, is tenable.

The issuing of bonds for the purpose of funding existing indebtedness is not a "borrowing of money." (*City of Galena* v. *Corwith,* 48 Ill. 423, 95 Am. Dec. 557; *City of Huron* v. *Second Ward Sav. Bank,* 86 Fed. 272, 30 C. C. A. 38.) The borrowing

of money and reception is a loan, and implies that it will be repaid. (*Palmer* v. *City of Albuquerque*, 19 N. M. 285, L. R. A. 1915A, 1106, 142 Pac. 929.) "To contract a debt by borrowing or otherwise and to give a bond or obligation therefor which may circulate in the market as a negotiable security free from any equities or defenses that may be set up by the maker of it, are, it is said, in their nature, and legal effect, different transactions." (2 Dillon on Municipal Corporations, p. 1330.) The borrowing of money and issuing bonds as security therefor, and the issuing of bonds for the purpose of funding an existing indebtedness are entirely different transactions. (*Merrill* v. *Monticello*, 138 U. S. 673, 34 L. Ed. 1069, 11 Sup. Ct. Rep. 441.) The issuing of funding bonds in lieu of a valid pre-existing indebtedness neither creates a debt nor increases the debt of the municipality issuing them. (*In re Application of State to Issue Bonds*, 33 Okl. 797, 127 Pac. 1065; *Board of Co. Commrs.* v. *Standley*, 24 Colo. 1, 49 Pac. 23.) If, therefore, the issuing of funding bonds neither increases the debt nor creates a new debt, there is no borrowing of money, as a borrowing means a loan by the party furnishing the money, and a loan implies repayment of the money loaned, a debt thereby being created. Generally as to the effect of issuing refunding bonds, see: *Board of Co. Commrs.* v. *Rollins*, 9 Wyo. 281, 62 Pac. 351; *Board of Co. Commrs.* v. *Aetna Life Ins. Co.*, 90 Fed. 222, 32 C. C. A. 585; *Brenham* v. *German American Bank*, 144 U. S. 173, 36 L. Ed. 390, 12 Sup. Ct. Rep. 559; note to *Hagan* v. *Co. Commrs.*, 37 L. R. A. (n. s.) 1058. The case of *City of Poughkeepsie* v. *Quintard*, 136 N. Y. 275, 32 N. E. 764, has been cited with approval in the following cases: *National Life Ins. Co.* v. *Montpelier*, 13 S. D. 37, 79 Am. St. Rep. 876, 48 L. R. A. 785, 82 N. W. 78; *Barnum* v. *Board of Supervisors*, 137 N. Y. 179, 33 N. E. 162. In the case of *City of Poughkeepsie* v. *Quintard, supra,* the sole question presented to the court was whether the issuing of refunding bonds was a borrowing of money. There the statute provided two methods of refunding the existing indebtedness: one by a sale of the bonds applying the proceeds to the retirement of the

old bonds; the other by an exchange of the new bonds for the old. The purchaser refused to take the new bonds, claiming that it was a borrowing of money within the prohibition of the city charter; the court held that as no new debt was created and no old debt increased, it was not a borrowing of money, as the borrowing of money would mean the creation of a new debt or increasing of an old one.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

In October, 1915, Lewis and Clark county had outstanding registered warrants against its several funds, aggregating in amount $100,000. Of this amount $32,077.82 represented road warrants issued for work done during 1914 and 1915 prior to June 14, 1915, on the public highways outside of the corporate limits of the city of Helena—the only incorporated city in the county. The board of county commissioners proposed to retire all of this warrant indebtedness by issuing and selling coupon bonds of the county to the like amount without having submitted the question to a vote of the electors, and plaintiff, a resident taxpayer within the city of Helena, instituted this proceeding to enjoin the issue of bonds to the extent of the $32,077.82 represented by the road warrants. The cause was submitted upon an agreed statement of facts. The trial court found for the defendant, and plaintiff appealed from the judgment which denied him any relief.

It is claimed by appellant, and conceded by respondent, that the property of appellant situated within the corporate limits of the city of Helena is not liable to taxation to pay the road warrants. It is conceded by both parties, as it must be, that if county bonds are issued to retire these warrants, such bonds will evidence an indebtedness of the entire county, and all taxable property of the county, including plaintiff's property situated within the city of Helena, will be liable to taxation to pay these bonds and the interest thereon. It is the contention of appellant that his property cannot be subjected to taxation to

discharge this indebtedness, by the mere subterfuge of changing the form of the evidence of the indebtedness without his consent, and that the county cannot issue refunding bonds without having the question submitted to and approved by a vote of the electors affected.

To justify the board in seeking to issue these bonds without consulting the electors affected, recourse is had to section 8, Article XII, of the Constitution, and section 2905, Revised Codes, as amended by an Act approved February 26, 1915 (Laws 1915, p. 47). The section of the Constitution referred to provides: "Private property shall not be taken or sold for the corporate debts of public corporations, but the legislative assembly may provide by law for the funding thereof, and shall provide by law for the payment thereof, including all funded debts and obligations, by assessment and taxation of all private property not exempt from taxation within the limits of the territory over which such corporations respectively have authority."

Our Constitution is not a grant, but a limitation of power. [1] Section 8, Article XII above, means nothing more than that the legislature is prohibited from enacting any statute under which private property may be taken to pay the debts of a public corporation, such as a county or city. Aside from this limitation the legislature was left free to enact such measures as it deemed best touching the subject matter under consideration. If it failed to act at all, there is no power other than public opinion which can coerce it into activity. The provision of the Constitution is addressed to the legislature, not to the board of county commissioners, and justification for the board's action must be found in the statutes, if such action can be justified at all.

A county is but a political subdivision of the state for governmental purposes, and as such is at all times subject to legislative regulation and control, except in so far as the Constitution has placed limitations upon the law-making power. (*Hersey* v. *Neilson,* 47 Mont. 132, 131 Pac. 30.) Within those limitations the legislature may circumscribe or extend the powers to be exer-

[3]    cised by a county, as it sees fit. The statutes constitute the charter of a county's power, and to them it must look for the evidence of any authority sought to be exercised. (7 R. C. L. 936.) The only statute upon which respondent relies, and the only one which furnishes even a semblance of justification, is section 2905, Revised Codes as amended, above. That section provides: "The board of county commissioners of any county is hereby vested with power and authority to issue and negotiate on the credit of the county, coupon bonds to an amount sufficient to enable the county to redeem all legal outstanding bonds, warrants or orders; or for the purpose of necessary public building sites and for the construction of necessary public buildings, public highways," *etc.*

In the days of the territory many general and special statutes were enacted to enable counties to borrow money, and to refund their outstanding indebtedness. A limit to the amount of indebtedness which might be incurred was always set, and before bonds could be issued for certain specified purposes the consent of the electors was necessary. Section 786, Fifth Division, Compiled Statutes 1887, authorized the county commissioners of any county to issue county bonds to redeem outstanding warrants or orders. Subdivision 4 of section 756 clothed the board with authority to borrow money upon the credit of the county in a sum sufficient to erect county buildings or to supply a deficit in the county revenues; but section 795 required that the question of borrowing money for either purpose mentioned in subdivision 4 above must first be submitted to a vote of the electors of the county. By an Act approved March 4, 1891, section 795 was amended to read as follows: "The board of county commissioners of any county may, when in its judgment it is advisable for the county to incur indebtedness or liability for any single purpose in an amount exceeding ten thousand dollars ($10,000), submit the question to the qualified electors of the county"; and section 808 was amended so as to authorize the issuance of refunding bonds and, upon a favorable vote of the electors, bonds for other purposes. (Laws 1891, p. 226.) In *Hotchkiss* v. *Marion,* 12

Mont. 218, 29 Pac. 821, it was held that under those statutes the question of issuing refunding bonds need not be submitted to a vote of the electors. This was the law when the Codes were adopted in 1895.

Title II, Part IV, of the Political Code, dealt with the subject: "The Government of Counties." Section 4240 of that Title gave to the board of county commissioners authority to issue on the credit of the county coupon bonds to an amount sufficient to enable it to redeem all legal outstanding bonds, warrants or orders, *etc.* Section 4270 of the same Title declared that the board of county commissioners must not borrow money for any of the purposes mentioned *in this Title* or for any single purpose, to an amount exceeding $10,000 without an approval of a majority of the electors of the county. By an Act approved February 27, 1905, section 4240 above was amended to include other purposes for which bonds might be issued, and as thus amended that section became section 2905, Revised Codes, and section 4270, without amendment became section 2933, Revised Codes. By the Act of February 26, 1915, section 2905 was amended to further extend the scope of the purposes for which bonds may be issued. Section 2933 has not been changed since it was enacted in 1895 or re-enacted in 1907. The amendment to section 2905 did not alter in any respect the provision authorizing the county commissioners to issue bonds for refunding or retiring outstanding indebtedness, and under the rule of construction provided by the Codes (sec. 119, Rev. Codes), the portion of section 2905 relating to that subject is to be considered as having been the law from the time when it was first enacted.

We are, then, to determine the authority of the board to issue [4] refunding bonds, by reference to section 2905 and section 2933, Revised Codes. The two sections are parts of the same legislative enactment, treat of the same subject matter, and are to be construed together. The first contains a general grant of power—the power to issue county bonds for refunding and other enumerated purposes. The latter specifies the conditions under

which the power granted may be exercised if the amount of the loan is to exceed $10,000.

The language of section 2933 cannot be misunderstood: "The [5] board of county commissioners must not borrow money for any of the purposes mentioned in this Title or for any single purpose to an amount exceeding ten thousand dollars without the approval of a majority of the electors of the county, and without first having submitted the question of a loan to a vote of such electors." "The purposes mentioned *in this Title*" include all the purposes enumerated in section 2905, for both sections are parts of the same Title. But we are asked to construe this phrase in the light of its historical antecedents—in other words, to declare that the language quoted above does not mean what it says, but was intended to comprehend only the limited number of subjects mentioned in subdivision 4 of section 756, Fifth Division, Compiled Statutes of 1887. This we cannot do. The language is altogether different from that employed in the territorial statute, and in reviewing the history of the Act we cannot close our eyes to the fact that after this court had interpreted the former provisions, in *Hotchkiss* v. *Marion,* the legislature deliberately saw fit to make the radical change in phraseology, thereby furnishing the very best evidence that it was the intention to establish a rule different from the one announced in that case. The language, "for any of the purposes mentioned in this Title," is as comprehensive as it can be made. The commissioners cannot borrow money to refund outstanding indebtedness exceeding ten thousand dollars, by the issuance of bonds or otherwise, without having first obtained the approval of the electors of the county.

If the commissioners issue and sell these bonds, will they thereby borrow money within the meaning of section 2933 above? We think counsel for respondent have confused the ideas expressed in section 5, Article XIII, of the Constitution, and section 2933. The Constitution declares: "No county shall incur any indebtedness or liability for any single purpose to an amount exceeding ten thousand dollars ($10,000) without the approval

of a majority of the electors thereof, voting at an election to be provided by law.'' In *Hotchkiss* v. *Marion* above, and in *Palmer* v. *City of Helena,* 19 Mont. 61, 47 Pac. 209, it was held that the issuance of refunding bonds merely changed the form of the evidence of pre-existing indebtedness and did not involve the creation of any new indebtedness within the meaning of the constitutional provision above. That inhibition of the Constitution is directed to the legislature. Our legislature is one of inherent, not of delegated, powers, and the restraint laid upon the lawmakers in that instance does not operate to prevent them from imposing upon the counties further limitations in the management of county finances. Acting upon the authority reserved to it, the legislature has provided that a county shall not borrow money for any of the purposes mentioned in section 2905, to an amount exceeding ten thousand dollars, without the consent of the electors who must bear the burden of providing the funds for repaying the loan.

The terms ''incur indebtedness or liability,'' as used in the [6] Constitution, are not synonymous with the term ''borrow money,'' used in section 2933. (7 R. C. L. 944–951.) It is apparent to anyone that the indebtedness represented by the road warrants will not be discharged by issuing bonds and from the proceeds paying off the warrants and that no new indebtedness will be incurred. The indebtedness will remain but the evidence of it will be changed from the warrants to the bonds. The transaction is not unlike that of the individual who gives his note for an indebtedness represented by a due-bill or open account, or who borrows from A to pay B. The indebtedness still exists though it may be evidenced by a different instrument, payable to a different creditor or more effectively secured.

Section 5, Article XIII above, has to do with the creation of *new* indebtedness or liability. The provision for funding an existing indebtedness is found in section 8, Article XII, where the entire subject is referred to the legislature. While it is true that by issuing and selling these bonds to take up the warrants, no *new* indebtedness will be incurred, it is equally true that when

the bonds are sold and the money received, the transaction has amounted to nothing more nor less than borrowing money from the purchaser of the bonds. (*Commonwealth* v. *Select and Common Council of Pittsburg,* 34 Pa. 496; *The Legal Tender Case,* 110 U. S. 421, 28 L. Ed. 204, 4 Sup. Ct. Rep. 122; *Scipio* v. *Wright,* 101 U. S. 665, 25 L. Ed. 1037.) This is the sense in which the term "borrowing money" is used throughout our Codes. Indeed, a county cannot borrow money in any other manner than by issuing its bonds or other evidence of indebtedness, and in our opinion it was to prevent just such a transaction as the one contemplated by respondent that section 2933 was enacted. Whether the legislation is wise or otherwise is not a matter of our concern. Section 5, Article XIII, has to do only with the creation of new indebtedness, while section 2933 relates to borrowing money, whether the money borrowed is to be used to refund existing indebtedness or for any other purpose mentioned in the Title of which that section forms a part.

If the commissioners were permitted to complete the issue and sale of these bonds, they would borrow $100,000 on the credit of the county without the consent of the electors and without having submitted the question of a loan to a vote of the electors, and all in violation of the express prohibition of section 2933.

Appellant also invokes the provisions of Chapter 141, Laws of 1915, but in view of the conclusion already reached, we deem it unnecessary to consider that Act. Under the facts agreed upon, the plaintiff is entitled to the relief sought.

The judgment is reversed and the cause is remanded, with directions to enter a decree in favor of the plaintiff.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SANNER concur.

ON REHEARING.

(Submitted April 30, 1917.    Decided June 4, 1917.)

MR. JUSTICE SANNER delivered the opinion of the court.

We have carefully considered the arguments and additional authorities submitted on the rehearing of this cause, and we have reconsidered the foundations of the opinion heretofore filed herein. We see no escape from the conclusions there announced, and accordingly adhere to our decision.

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.