STATE, *ex rel.* J. W. GILLESPIE, *et al.,* v. E. B. WALTHALL, as Mayor, etc., *et al.,* as members of the City Commission of the City of Winter Haven.

169 So. 552.

Division B.

Opinion Filed July 21, 1936.

*D. C. Hull* and *Hull, Landis & Whitehair,* for Relators; *Henry Sinclair,* for Respondents.

BUFORD, J.—In mandamus proceedings instituted to coerce the assessment and levy of a tax for the year 1935 sufficient to produce when collected the sum of $110,000.00 for the purpose of adequately providing a fund sufficient to pay accruing interest and to apply on the creation of a sinking fund to pay the principal of certain refunding bonds as and when the same became due and payable in 1936.

The respondent municipality has filed a return.

There is a demurrer to the return and a motion to strike parts of the return. There is also motion to quash alternative writ of mandamus. Motion to quash is denied.

The motion to strike is directed against paragraphs XXV to XXXIV, inclusive.

The paragraphs of the return attempted to set up as a defense on the part of the municipality that the refunding bonds pledged sources of revenue not pledged by the 23 issues of bonds refunded thereby and that such bonds were not issued pursuant to election according to Section 6, Article IX, of the Constitution of Florida. And the further defense that the general refunding bonds which constitute the basis for the levy which is sought to be coerced by mandamus, were and are invalid because a part of the proceeds of some of the original bonds were spent in installing improvements beyond the legal corporate limits of the City of Winter Haven.

It is shown by the above stated paragraphs of the return that the City officials of the City of Winter Haven made the alleged improvements under the apprehension and belief that Chapter 11301, Laws of Florida, Acts of 1935, was valid and binding and established the boundaries of the City of Winter Haven and that by adherence to such boundaries the improvements were made within what was believed to be the corporate limits of the City of Winter Haven.

Paragraph 33 of the return alleges that there is another suit pending in Polk County, Florida, seeking to coerce the levy of a tax roll of 1934 sufficient to pay interest on the same bonds here in litigation for the year 1935 and to create an adequate sinking fund to be applied to the payment of the principal of such bonds.

Paragraph 32 is in response to paragraph 9 of the alternative writ. In paragraph 9 it is alleged in effect that the issues of bonds described in paragraphs 2 and 5 of the alternative writ were validated and confirmed by decree of the Circuit Court of the Tenth Judicial Circuit in and for Polk County, Florida; that no appeal was taken to the decree; that the time for taking an appeal therefrom has expired, and further, "that it is provided in and by the resolution of the City Commission of said City of Winter Haven providing for the issuance of said bonds, that the full faith and credit of said City of Winter Haven, Florida, shall be pledged for the full and prompt payment of the principal and interest of said bonds, and the governing authority of the City of Winter Haven, Florida, thereby covenants and agrees with the holders of any and all General Refunding bonds and interest coupons issued under the provisions of said resolution that the said City of Winter Haven, Florida, will make prompt payment of the same

when due; that it is further provided in said resolution that for the purpose of adequately providing for the payment of the interest coupons and for a sinking fund for the retirement of all of said General Refunding Bonds, Issue of 1933, therein authorized, the governing authority of the City of Winter Haven, Florida, covenants and agrees with the holders of the General Refunding Bonds, Issue of 1933, that in the annual budget an *ad valorem* tax levy to be prepared and made in each of the years 1933 and 1963, inclusive, there shall be included a levy of an *ad valorem* tax upon all the taxable property in the City in an amount to the aggregate annually not less than the amounts shown opposite the respective years in the following schedule"; and then follows the schedule referred to.

Paragraph 32 of the Return admits that the bonds were validated by decree of the Circuit Court, but alleges that the Circuit Court was without authority or power to validate the bonds for the reason that they were issued in violation of the Constitution of the State of Florida. The allegation that the Circuit Court was without authority or power to validate the bonds, as above stated, was a conclusion of law not warranted by the face of the record. The Circuit Court had the power to adjudicate the question presented to it, and, insofar as the municipality was concerned, it is bound by that adjudication. Acting upon this decree of validation procured by the bond issuing authority, original bonds were exchanged for these refunding bonds and the original bonds, as is shown by the record here, were canceled, mutilitated and destroyed.

The allegation that the Circuit Court was without authority to validate the bonds is based upon the premise that Chapter 11301, Acts of 1925, was invalid because it designated greater territory than could legally be included by

the Legislature within the corporate limits of the City of Winter Haven. At the time the original bonds were issued, however, the City of Winter Haven was exercising jurisdiction under color of right over all the territory described in that legislative Act and the bonds of the City of Winter Haven were issued in part to produce funds with which to make paving improvements in some of that territory which was illegally included within the corporate limits of the City of Winter Haven. In this connection the City of Winter Haven was, until the legislative Act was held invalid by a court of competent jurisdiction, at least a *de facto* corporation. While the legislative Act, Chapter 11301, has heretofore been held and adjudicated invalid because of the excessiveness of the territory included thereby, it should be held and deemed to have been sufficient to warrant the City of Winter Haven in making public improvements within that excessive area so as to extend to that area any and all municipal benefits which the City of Winter Haven could extend to such area. Unless this is true, then a municipality can not extend its corporate area; because it is settled that the City may not include within its territorial jurisdiction areas which are not subject to being served by municipal benefits; and if the city, upon annexing additional territory, may not legally proceed to extend municipal benefits into that territory, then the additional territory should be withdrawn from the municipality because of the lack of municipal benefit.

So, we hold that it was the duty of the municipality to extend municipal benefits into additional territory insofar as the same was feasible and practicable and there is nothing here to show that the improvements extended into this additional territory were not warranted.

Even if it turned out that these improvements were made

beyond the legally established territorial boundaries of the City, the legislative Acts are sufficient to have authorized the City to make the improvements in that territory.

It appears to be well settled that the Legislature may authorize a municipality to improve or extend roads beyond its boundaries. See Hagood v. Hutton, 33 Mo. 244; Takoma v. Titlow, 53 Wash. 217, 101 Pac. 827; and see also Matter of East Syracuse (N. Y.) 20 Abb. N. Cases (N. Y.) 131.

In the case of Wendt v. Berry, Trustee, 154 Ky. 586, the Court said:

"In Norton v. Shelby County, the Supreme Court adopted as sound the definitions of a *de facto* officer laid down as follows in State v. Carroll, 38 Conn. 449: 'An officer *de facto* is one whose acts, though not those of a lawful officer, the law, upon the principles of policy and justice, will hold valid, so far as they involve the interests of the public and third persons, where the duties of the office are exercised:

" 'First. Without a known appointment or election, but under such circumstances of a reputation of acquiescence as were calculated to induce people, without inquiry, to submit to or invoke his action, supposing him to be the officer he assumed to be.

" 'Second. Under color of a known and valid appointment or election, but where the officer had failed to conform to some precedent, requirement or condition, as to take an oath, give a bond, or the like.

" 'Third. Under color of a known election or appointment, void because the officer was not eligible, or because there was a want of power in the electing or appointing body, or by reason of some defect or irregularity in

its exercise, such ineligibility, want of power or defect being known to the public.

" 'Fourth. Under color of an election or an appointment by or pursuant to a public, unconstitutional law, before the same is adjudged to be such.'

"These definitions appear to us to be exceptionally well stated, and to cover fully every state of case in which the authority of a *de facto* officer may be exercised. The facts of the case we have bring it easily within both the first and fourth of the definitions given. Here the municipal government of the City of Clifton was organized pursuant to an act of the Legislature of the State that conferred upon the officers all the powers they assumed to exercise and gave them the right to create the liabilities they did create in the construction of street improvements and to impose upon the property holders the burden they did impose arising out of these improvements. At the time these improvements were made and at all times from the establishment of the city under the legislative Act, until the Act was held unconstitutional, the persons exercising the powers of officers of the municipality, the people of the city, the property owners and contractors, and the public generally, believed, and had a right to believe, that the organization of the city was legal. Acting under this assumption, indulged in by every person in any manner connected with the administration of the affairs of the city either in an official or private capacity, the city authorities discharged without question or protest all of the duties belonging to their respective offices. Under these circumstances it would not only be a manifest injustice but a positive wrong to deny to the acts of these officers the validity to which acts of legally elected officers are entitled.

"As the principles upon which the validity of the acts of

*de facto* officers rest are not defined by either Constitution or statute, and the courts are free except as they may feel bound by precedent, to adopt such views as will best subserve the ends of justice, it would be a signal and unfortunate demonstration of the inability of the courts, when unrestrained by legislative enactment or judicial precedent, to administer the law according to the rights of the case if the appellant contractor should be denied the relief sought. To say that the property owner should be allowed to receive and retain substantial and permanent benefits to his property without compensating the contractor whose labor furnished the benefits, and to turn the contractor out of court empty handed, would be a departure from the principles that have at all times controlled this court in the decisions of cases where it was free to exercise its discretion.

"Acts of the Legislature are presumed to be valid until declared void by the courts. The people generally and rightfully so regard them. The power and authority of public officers who exercise the duties of office under legislative enactments is recognized by all persons with whom they have dealings in their official capacity, and the public good imperatively demands that validity should be given to the acts of these officers when they are performing duties within the scope of their public authority. If individuals dealing with public officers might in every instance question their authority or deny their right to exercise the office until the courts of last resort had given the sanction of their approval to the validity of the legislation under which the office was established, the conduct of public affairs would be involved in interminable confusion and doubt. No person would feel secure either in his personal or his private rights. Confusion and uncertainty would attend every official act that was performed. Such a condition

as this would be disastrous to the peace and welfare of society. It would encourage the lawless to persist in their offenses and make difficult the just enforcement of the law, as persons charged with this duty and willing to exercise it, would always be apprehensive of their right to do so."

In the case of City of Albuquerque v. Water Supply Co., 24 N. Mex. 368, 174 Pac. 217, it was held:

"A municipal corporation created under an unconstitutional charter, is a *de facto* corporation, and its officers are *de facto* officers. The existence of the corporation and its right to make contracts and transact business as such corporation cannot be raised collaterally. The existence of such municipality can only be questioned by the state in a direct proceeding instituted by the Attorney General for that purpose, and until the question is thus raised and an adjudication had ousting the corporation from exercise of the franchise all acts done and contracts made by the officers of such a *de facto* municipality are as valid and binding upon it and the property within its limits as though some officers were *de jure* officers of a *de jure* corporation."

In Young v. City of Colorado, the Texas Court of Civil Appeals, case reported 174 S. W. 986, held:

"A city which has been organized under a statute, and which has proceeded to do business and has received benefits under it, cannot assert its invalidity."

"A city which has availed itself of the benefit of the statutes allowing a dissolution of a former city by reincorporating the same territory, and which has assumed control thereof, may not assail the validity of the statutes as against a person having a contract with the former city."

So, it appears that there is no valid defense up in the several paragraphs of the Return to which motion to strike is addressed.

The Demurrer is addressed to the Return, and each and every paragraph thereof.

We have carefully considered the Return and, while it is of great length because it attempts to deal with the 23 original bond issues and also this refunding bond issue, it may be said that it raises or presents two questions. One is whether or not the refunding bonds are so invalid that no tax may be levied to produce a fund to pay interest or to create a sinking fund for the payment of the principal of the same because the refunding bonds pledged sources of revenue not pledged in the 23 issues of bonds refunded; and (2) that the general refunding bonds are invalid because they were issued to refund prior bonds which were issued to produce a fund with which to pay for improvements that were made within what was then believed to be a part of the territory embraced within the municipality of the City of Winter Haven under a legislative Act which included that territory within the City of Winter Haven, but which legislative Act was later held to be invalid and that particular territory held not to have been legally included within the municipality.

It is also alleged on information and belief that the relators are not the owners and holders of the bonds claimed by them in this suit.

The right of a bondholder to require compliance with the statutory provisions for the levy of a tax for the interest and sinking fund requirements of his bonds where there has been a failure on the part of the taxing authority to make the necessary levy without waiting for officials of such taxing authority to fail and refuse to make the current appropriation and tax levy for such bonds as above, was enunciated by this Court in the case of State, *ex rel.* Har-

rington v. City of Daytona Beach, *et al.,* 118 Fla. 773, 160 Sou. 501, and cases there cited.

The record shows conclusively that the bonds which constitute the basis for the relief sought here were validated by a court of competent jurisdiction in a suit instituted for that purpose by the respondent in these proceedings. We hold that the respondent is bound by the result of that suit. It is shown by the record, by the allegations of the alternative writ and by the return that all of the bonds refunded by this issue constitute a general obligation of the City of Winter Haven and that the refunding bonds constitute the general obligation of the City of Winter Haven; that the refunding bonds were exchanged for the original bonds which these bonds were issued to refund and, therefore, were at least valid extensions *pro tanto* of the original obligations.

Whether or not the holders of the refunding bonds may require payment of those bonds or the interest thereon from funds derived from a source not pledged in the original bonds is a question which we are not in this suit required to determine because here the Relator seeks only to have applied that source of revenue which he was entitled to have applied to the payment of his original bonds. In Aetna Life Insurance Co. v. Lyon County, 44 Fed. 329, in the Circuit Court, Northern District of Iowa, Western Division, Judge Shira, presiding, said:

"It clearly appears from the evidence that the plaintiff and other purchasers of the bonds issued by the defendant county in pursuance of the resolution adopted by the Board of Supervisors in April, 1884, bought the same in good faith and paid therefor the full face value and accrued interest; and the amount thus received was applied by the county, through its refunding agent, to the payment of

bonds then outstanding against the county. It no less clearly appears that the issue of bonds negotiated by B. L. Richards on behalf of the county, being in amount $120,000, exceeded largely the constitutional limitation of 5 per cent. upon the valuation of the taxable property in the county as shown by the last preceding state and county tax lists. If this issue of bonds had been negotiated in the purchase of property then acquired, or for the erection of county buildings or other like purpose, so that thereby a new or original indebtedness had been thereby created against the county, there could then be no question that the bonds themselves would be void by reason of the provision of the Constitution of the State of Iowa, limiting the indebtedness of all municipal and political corporations within the State to 5 per cent. upon the taxable valuation of the property within the limits of the particular corporation, and a recovery thereon could not be had, even in favor of parties who had paid full value therefor in the belief that the bonds were valid. Buchanan v. Litchfield, 102 U. S. 278; Dixon Co. v. Field, 111 U. S. 83, 4 Sup. Ct. Rep. 315; Lake Co. v. Rollins, 130 U. S. 662; 9 Sup. Ct. Rep. 651; Lake Co. v. Graham, 130 U. S. 674, 9 Sup. Ct. Rep. 654. The bonds in question were not issued for any such purpose, but were issued for the purpose of refunding other outstanding bonds of the county; and the issuance thereof did not in fact increase the indebtedness of the county, but only changed the form or evidence of indebtedness Under these circumstances, it is broadly claimed on behalf of plaintiff that the bonds, being issued to refund or pay other bonds, are not affected by the constitutional limitation.

"To the extent of holding that, as applied to a series of refunding bonds, the mere fact that the amount thereof might exceed 5 per cent. of the then taxable valuation of

the property within the county, as shown by the tax lists would not necessarily show that the bonds so issued were invalid I can agree in the views of counsel for plaintiff. If a county owes a valid and enforceable indebtedness, refunding bonds, issued under authority of an Act of the Legislature for the purpose of taking up such enforceable indebtedness, are not invalid because they may exceed the 5 per cent. limitation. In such case the refunding bonds are valid, because they represent a valid indebtedness. Railroad Co. v. County of Osceola, 45 Iowa 168; Austin v. District Tp. of Colony, 51 Iowa 102. In suits, therefore, upon refunding bonds representing prior indebtedness, it is necessary, in order to sustain the defense of invalidity, to show that the indebtedness merged in and represented by the refunding bonds was itself invalid and non-enforceable, either in whole or in part, and, in the present case, both parties have introduced evidence on this issue."

For the reasons stated, the motion to strike the said paragraphs of the Return is granted and the demurrer to the Return is sustained and the motion to quash the alternative writ of mandamus is denied.

The Respondents are allowed Ten (10) days from the date of filing of this opinion in which to file further return, in default of which Relators will be allowed to amend the alternative writ so as to make same applicable to an available tax roll because it appears that the time has expired when the levy and assessment can be made on the rolls of 1935, and, thereupon, peremptory writ of mandamus will issue.

So ordered.

Ellis, P. J., and Terrell, J., concur.

WHITFIELD, C. J., and DAVIS, J., concur in the opinion and judgment.

BROWN, J., dissents.